352 A.2d 661.

J. M. MILLS, INC. *et al. vs.* DENNIS MURPHY, *Director Department of Natural Resources.*

FEBRUARY 26, 1976.

PRESENT: Paolino, Acting C. J., Joslin, Kelleher and Doris, JJ.

Doris, J. This is a civil action for a declaratory judgment brought under the provisions of the Uniform Declaratory Judgments Act, G. L. 1956 (1969 Reenactment) chapter 30 of title 9. The case was tried to a justice of the Superior Court sitting without a jury who entered judgment for the defendant. From this judgment, the plaintiffs now appeal.

The plaintiffs, a Rhode Island corporation, together with certain individuals, are owners of approximately one hundred acres of land in the Towns of Cumberland and Lincoln. In 1969, as part of a reclamation project, plaintiffs attempted to relocate some 3800 feet of the Blackstone River where it ran through their property. The director of Natural Resources required plaintiffs to submit detailed plans of the projected relocation, and after public hearings on the question, plaintiffs were ordered to cease all filling operations and to restore the river to its natural course.

On July 27, 1970, plaintiffs filed a complaint in Superior Court alleging that the department lacked jurisdiction over the relocation of the river. On July 2, 1971, after a hearing, judgment was entered for plaintiffs on the grounds the department lacked jurisdiction to order the reclamation stopped.

On July 16, 1971, the Legislature passed the "Fresh Water Wetlands Act" (hereinafter termed the Act), G. L. 1956 §2-1-18 to §2-1-24. The Act provides for regulation of all fresh water wetlands, a classification into which plaintiffs' property admittedly falls. It opens with a declaration of state policy in regards to wetlands; it then proceeds to define the geographical jurisdiction of the Act and to declare that approval of both the director of the Department of Natural Resources and the municipality in which the land is located is required before a wetland may be altered; the procedure for obtaining such approval is outlined and the Act closes with a delineation of the authority of the director to respond to violations of the provisions of the Act.

On May 18, 1973, plaintiffs filed a complaint for a declaratory judgment alleging that unless defendant, the director of Department of Natural Resources, is restrained from enforcing the Act they will suffer irreparable harm. The

complaint further alleges that the Act is unconstitutional on its face in that it is an unlawful delegation of legislative authority, that it denies its subjects the equal protection of the law, and that it deprives the landowner of the beneficial use of his property without just compensation.

The defendant filed an answer denying plaintiffs' allegations of unconstitutionality, and both parties proceeded to file motions for summary judgment. After memoranda of law were submitted by the parties and amicus curiae, a hearing was scheduled before a justice of the Superior Court sitting without a jury. At the close of oral argument, the Superior Court held that the Act was not unconstitutional on its face, denied plaintiffs' motion for summary judgment, and granted defendant's motion.

Judgment for defendant was entered on October 18, 1973, and on October 23, 1973, plaintiffs filed their notice of appeal to this court. During the pendency of the appeal, the Act was amended by P. L. 1974, ch. 197, which in important part added a subsection to §2-1-21. On appeal, plaintiffs develop the same arguments of unconstitutionality they offered below, directed this time towards the Act as amended.

We first address ourselves to the question of whether we should consider the Act as it existed at the time the case was heard below or in its amended form. There is a division of authority on the issue of whether an appellate court should apply the law existing at the time of its decision or the law existing at the time of the judgment below. Annot., 111 A.L.R. 1317 (1937). This court has noted that the resolution of this issue will depend on the peculiar nature of the case presenting the issue. *Twomey* v. *Carlton House of Providence, Inc.,* 113 R. I. 264, 320 A.2d 98 (1974). Thus in recent years we have reached differing results when confronted with different kinds of

cases. Compare *Goodman* v. *Zoning Bd. of Review,* 105 R. I. 680, 254 A.2d 743 (1969) *with H. J. Bernard Realty Co.* v. *Director of Employment Sec.,* 104 R. I. 651, 248 A.2d 245 (1968) *and King* v. *Brown,* 102 R. I. 42, 227 A.2d 589 (1967).

Other jurisdictions have generally held that the right to an injunction will be determined on appeal according to the law prevailing at the time the decision is rendered on the theory that the rights at issue are future rights only. Annot., 111 A.L.R. *supra* at 1328; 5B C.J.S., *Appeal and Error* §1841 (1958). We note that the instant action is for a declaratory judgment and could not possibly involve the abrogation of substantive rights already vested, the rights in question are all in futuro.

We also note that in zoning cases we have applied the law prevailing at the time of our decision on the theory that the public's interest in the zoning scheme should outweigh the individual's right to obtain a permit, at least in the situation where the landowner has not relied to his detriment on the original ordinance. *Goodman* v. *Zoning Bd. of Review, supra; A. Ferland & Sons* v. *Zoning Bd. of Review,* 105 R. I. 275, 251 A.2d 536 (1969). A similar balance of interest obtains in the instant case except that here the landowners are actually requesting that the Act be considered as amended.

This factor of the public interest in the result of the decision may be applied to the question of what law should govern the decision in a somewhat different way. The United States Supreme Court has suggested that in a suit involving the limited concerns of two private parties, a court should attempt to avoid a construction having a retrospective impact on the rights of the parties, but that where great public rights are involved a construction of the present impact of the law should be attempted. *United States* v. *Schooner Peggy,* 5 U. S. (1 Cranch) 103,

2 L.Ed. 49 (1801), cited by Annot., 111 A.L.R. *supra* at 1326. In the instant case, plaintiffs are attempting to litigate the validity of a legislative enactment affecting the rights of all owners of wetlands and not merely the impact of the Act upon their own piece of property.

Finally, the determination that an appellate court should apply the law prevailing at the time of the decision below is based on the postulate that the basic function of an appellate court is to review the judgments made below for errors of law. While we subscribe to this view as a general principle, it is clear that its application is of substantially less force in a declaratory judgment action which presents pure issues of law on which the appellate court must in any case render an independent judgment.

The combined weight of these various factors convinces us that we should pass on the constitutionality of the Act in its amended form. We proceed now to an examination of plaintiffs' various allegations of unconstitutionality.

## I

The plaintiffs' first contention is that the Act attempts to delegate legislative power in violation of R. I. Const. art. IV, §§1 and 2. The delegation is contained in §2-1-21. as amended by P. L. 1974, ch. 197, and gives to the director of the Department of Natural Resources and the municipality in which the land is located, the authority to approve or disapprove a landowner's application to alter the character of any fresh water wetland. Section 2-1-21 reads in relevant part as follows:

> "Such approval will be denied if in the opinion of the director granting of such approval would not be in the best public interest. Such approval shall not be granted if the city council or town council of the town within whose borders the project lies shall have disapproved within forty-five (45) days period provided for objections set forth in §2-1-22. Appeal from such denial may be made to the superior court."

The plaintiffs argue that this language does not cloak the legislative delegation with sufficient standards confining the exercise of the power delegated to the public welfare sought to be served. They also argue that it fails to provide adequate guidelines for meaningful judicial review.

The nondelegation doctrine in Rhode Island stems from R. I. Const. art. IV, §§1 and 2, which provides that the Rhode Island Constitution shall be the supreme law of the state and that under the Constitution the legislative power shall be vested in the two houses of the Legislature. These sections, however, are not construed to prohibit entirely the delegation of legislative power. *City of Warwick* v. *Warwick Regular Firemen's Ass'n,* 106 R. I. 109, 256 A.2d 206 (1969). To the contrary they have been held to require only that a delegation of legislative power be cloaked with adequate standards. *State ex rel. Colvin* v. *Lombardi,* 104 R. I. 28, 241 A.2d 625 (1968); *Opinion to the Governor,* 91 R. I. 346, 162 A.2d 802 (1960).

With this relaxation of the nondelegation doctrine has come the realization that the adequacy of legislative standards cannot be meaningfully measured against some abstract limitation contained in R. I. Const. art. IV, §§1 and 2. Thus recent decisions have taken into account such factors as the need of the Legislature to utilize an administrative agent to accomplish the purposes of the legislation and secondly public benefit accruing from the enactment of legislative standards to accompany the delegation.

In *Pascale* v. *Capaldi,* 95 R. I. 38, 41, 182 A.2d 435, 436 (1962), we concluded that a delegation to the director of public works was valid where it was "* * * the most practical manner in which the legislative power to condemn may be exercised." Likewise in *City of Warwick* v.

*Warwick Regular Firemen's Ass'n, supra* at 113, 256 A.2d at 209 we stated that:

> "Where the purposes of the antecedent legislative enactment may be best accomplished through the employment of an agent acting in its stead, the legislature may delegate to that agent a sufficient portion of its power to enable it to make the statute operative."

In addition to this practical limitation on the standards required for a valid delegation is the conclusion that the adequacy of legislative standards may best be measured against their intended purposes. In *City of Warwick* v. *Warwick Regular Firemen's Ass'n, supra,* for example, we concluded that the standards prescribed in the legislation were sufficient to accomplish their bifurcated purpose of limiting the discretion of the administrative delegatees and providing a basis for judicial review of the actions taken pursuant to the authority delegated.

With these general principles in mind, we proceed to consider the validity of a delegation of authority to the director of the Department of Natural Resources to disapprove applications to alter fresh water wetlands. Section 2-1-21 requires anyone who would alter the character of a wetland to obtain the approval of the director and fixes the governing standard as the "best public interest." The plaintiffs argue that this is not a meaningful standard. In response to this contention, we first note that the director is given jurisdiction over only a very limited area, wetlands. The term "wetlands" is precisely defined in §2-1-20. In a previous case where this court found a valid delegation of authority to the Blackstone Valley Sewer District Commission, *City of Central Falls* v. *Halloran,* 94 R. I. 189, 179 A.2d 570 (1962), we placed great weight on the fact that the administrative agency was given discretion to act only in a well-defined geographical area. Here,

also, the scope of administrative authority is clearly confined.

Secondly, the Legislature in §§2-1-18 and 2-1-19 has set forth basic legislative policy in the area of wetlands. Section 2-1-18 recognizes specifically the valuable function played by wetlands in acting as buffer zones and absorption areas for flood waters and providing both wildlife habitats and recreational areas. The section goes on to say that protection of such wetlands for those and other stated purposes is in the "best public interest." Section 2-1-19 reiterates that it is state policy to preserve wetlands and declares that in order to accomplish this purpose, wetlands shall be regulated under the police power.

It is our opinion that the repetition of "best public interest" in §2-1-21, the delegation section, may reasonably be construed to incorporate the contents of §§2-1-18 and 2-1-19. Thus §2-1-21 delegates to the director the authority to disapprove an application whenever the proposed project would thwart the policies expressed in §2-1-19 to preserve wetlands in order that they may continue to carry out the functions expressly enumerated in §2-1-18. This court has consistently held that the stated purposes of a legislative enactment are relevant to the issue of whether the delegation was adequately cloaked with standards. *Pascale* v. *Capaldi; City of Central Falls* v. *Halloran; City of Warwick* v. *Warwick Regular Firemen's Ass'n,* all *supra.*

We conclude that the Legislature has thus enacted into law the general policy of preserving fresh water wetlands in order that the functions of these wetlands as enumerated in §2-1-18 may continue to be fulfilled. Pursuant to this authoritative statement in the best public interest, an administrative official has been delegated the power to make case-by-case determinations of whether a proposed project would significantly inhibit the present valu-

able functions of wetlands. In our opinion the statements of purpose and policy contained in the Act adequately limit the discretion of the director, and the Act therefore does not violate R. I. Const. art. IV, §§1 and 2 in granting authority to the director of the Department of Natural Resources accordingly to disapprove applications to alter fresh water wetlands.

We move now to a consideration of the delegation of authority to municipal units to disapprove an application to alter a wetland. Section 2-1-21(a) states in pertinent part that:

> "* * * approval shall not be granted if the city council or town council of the town within whose borders the project lies shall have disapproved within the forty-five (45) days period provided for objections set forth in §2-1-22."

The plaintiffs argue that this constitutes a delegation without even the best public interest standard and is therefore invalid.

Assuming, without deciding, that the nondelegation doctrine applies equally to the conferring of legislative power upon a unit of local government as to like delegation to a legislatively-created agency, we would find no violation of that doctrine here. The clear thrust of §2-1-21 is to confer upon the director the authority to decide whether a proposed wetland alteration is in the "best public interest," which determination is to be made by him, as we have already indicated, by reference to the express legislative statements of purpose and policy contained in §§2-1-18 and 2-1-19. To read the final sentence of §2-1-21 to confer upon local government the power to disapprove a proposed wetland change without regard to those same purpose and policy standards would be, in our opinion, a highly dubious if not absurd construction of that sentence and one we are therefore unable to accept. Thus, while there are no express limitations placed on a town's or

city's authority under §2-1-21, the same standards that control the director's determinations obtain by implication to actions taken thereunder by local governmental units.[1]

This would mark the conclusion of our inquiry into the validity of powers delegated by this Act were it not for the fact that plaintiffs' brief on appeal attacks not only the dearth of standards in §2-1-21 but also the nature of the authority delegated to the municipalities. They characterize this authority as an "unfettered, arbitrary and capricious veto power." Furthermore, the parties have stipulated that the decision of the Superior Court in the case of *Colapietro et al.* v. *Murphy,* C. A. No. 74-1734 may be added to the record before us. The text of this decision develops an argument which attacks the delegation to a municipality of power to disapprove an application to alter a wetland on the grounds of denial of due process under U. S. Const. art. XIV, §1. In the interests of judicial economy and believing the parties intended to incorporate these arguments, we will briefly consider the issues.

At the outset the parties would undoubtedly accept the principles that the Legislature may neither authorize arbitrary or otherwise unconstitutional action by a city or town council nor delegate the authority to do what it could not do itself, and that there exist potential limitations on the authority a delegatee may exercise other than those arising from R. I. Const. art. IV.

The authority delegated by §2-1-21 is the authority to

---

[1]The disposition of plaintiffs' contention on this ground makes unnecessary any consideration of whether the "nondelegation doctrine," commonly applicable to the delegation of legislative authority to administrative agencies, obtains with equal force to the conferring of like power to units of local government. *See generally Dukes* v. *Shell Oil Co.,* 40 Del. Ch. 174, 177 A.2d 785 (1962); 2 McQuillin, *Municipal Corporations* §4.09 (3d ed. 1966); 6 McQuillin, *Municipal Corporations* §§24.07 and 24.37 (3d ed. 1969); 16 C.J.S. *Constitutional Law* §140 (1956).

regulate the use of fresh water wetlands within municipal boundaries. This court has held that the exercise of such power is the exercise in part of the state police power. *Atlantic Tubing & Rubber Co. v. City Council,* 105 R. I. 584, 254 A.2d 92 (1969); *State v. Krzak,* 97 R. I. 156, 196 A.2d 417 (1964). In the *Atlantic Tubing* case, we noted that a municipality's authority to regulate the use of private property within its jurisdiction, being an exercise of the police power, is not inherent and is possessed by the municipality only by a grant from the Legislature. We went on to say that the exercise of such authority must be in accordance with the limitations on the police power. It is settled law that the exercise of the state's police power by municipality must be consistent with the law and policy of the state and that such exercise must not be arbitrary, capricious, or confiscatory. McQuillin, *supra,* §24.46.

As these inherent limitations on the exercise of the police power are necessarily included in §2-1-21, the city and town councils have been granted the authority to disapprove an application to alter a wetland only where such disapproval would not violate the constitutional rights of the landowner and where it is in accordance with the state policy on wetlands as established in §§2-1-18 and 2-1-19 of this Act. That being so, we conclude that the authority granted by §2-1-21 is not unconstitutional on its face as a denial of substantive due process.

Nor does §2-1-21, as written, deny a landower procedural due process. The Act grants the municipality the power to share in the regulation of wetlands within its boundaries, but it does not specify the procedures by which this municipal regulation is to be accomplished.[2]

---

[2]The director, however, is required by statute to provide the applicant with a hearing. As an agent of the Department of Natural Resources, the director is subject to the provisions of the Administrative Proce-

Having concluded, however, that a city or town council may disapprove an application under §2-1-21 only if the "best public interest" would otherwise be violated, it follows that its proceedings are judicial in character and that, as a condition precedent to those actions, an applicant is entitled even in the absence of statutory language providing therefore to due notice of a hearing, and an opportunity to be heard and offer evidence. *See Davis* v. *Cousineau,* 97 R. I. 85, 196 A.2d 153 (1963); *Cugini* v. *Chiaradio,* 96 R. I. 120, 189 A.2d 798 (1963); *Aniello* v. *Marcello,* 91 R. I. 198, 162 A.2d 270 (1960); *Norton* v. *Adams,* 24 R. I. 97, 52 A. 688 (1902). Whether the municipal council has succeeded in satisfying those preconditions in a given case is a question that may be raised on appeal to Superior Court. By providing for judicial review, the Legislature has given the landowner the opportunity to attack the decision below on the grounds that it denies him procedural or substantive due process or that it frustrates state policy by not taking cognizance of the considerations set out in §§2-1-18 and 2-1-19. Should the municipal council fail to specify its findings of facts or its reasons for disapproval, its decision should be dealt with by the Superior Court which is vested with jurisdiction to hear appeals in such matters in the same manner as would be an appeal from an agency decision under the Administrative Procedures Act. We cannot say at this time that §2-1-21 denies a landowner due process of law.

## II

The plaintiffs' second contention is that the Act denies them equal protection of the law as guaranteed by U. S.

---

dures Act. Section 42-35-14(a) provides that whenever the grant or denial of a license is required to be preceded by a notice or hearing, the agency must proceed under §42-35-9 which outlines the procedure for giving notice and for conducting a hearing. This procedure complements §2-1-22 which provides for a public hearing in the event that an objection to the project is made by an interested party.

Const. amend. XIV, §1. They allege that owners of fresh water wetlands are accorded different and less favorable treatment under the General Laws of Rhode Island than are owners of salt water wetlands.

Unless a suspect classification is created, a legislative decision to distinguish between two sets of persons will be upheld if it has any rational basis. *Dandridge* v. *Williams,* 397 U. S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). In order to establish a denial of equal protection in the instant case, plaintiffs must show that owners of fresh and salt water wetlands are similarly situated and that the differences in procedure adopted by the Coastal Wetlands Act, §§2-1-13 to 2-1-17 and by the instant Act lack all rational basis.

The Coastal Wetlands Act envisions affirmative action on the part of the Department of Natural Resources to the end of establishing a statewide plan for the protection of wetlands. The instant Act, on the other hand, sets out a permit procedure whereby the landowner is required to initiate the proceedings. This difference in overall approach is susceptible to a variety of reasonable explanations: the greater development pressure on coastal wetlands suggests the need for immediate state action while the situation regarding fresh water wetlands might not be so pressing; the high incidence of state-ownership in coastal wetlands might facilitate centralized action while the almost exclusively private ownership of fresh water wetlands would tend to hinder such an approach; the probable interdependence and interactions of coastal wetlands could necessitate unitary state action while the more random pattern of fresh water wetlands might thwart such an attempt.

Having in mind the need for significantly different approaches to the regulation of fresh and salt water wetlands, the Legislature could reasonably conclude that the

two methods of regulation posed dangers of differing magnitude to the rights of private individuals. Thus they may have decided that a statewide program of affirmative action, being less sensitive to individual circumstances, required the inclusion of prior hearings and a provision for compensation, while a procedure that envisioned the processing of a series of individual applications required only the availability of judicial review to ensure the protection of all constitutional rights, including that of just compensation. In these circumstances, we cannot say that the classifications created by the Legislature lack all rational basis. The plaintiffs' argument is without merit.

### III

The plaintiffs' final contention is that §2-1-21(b) deprives them of property without just compensation in violation of U. S. Const. amend. V, §1 and R. I. Const. art. I, §§2 and 16. They do not include the provisions of §2-1-21(a) in their challenge. As we believe the provisions of §2-1-21(b) cannot be meaningfully construed without an understanding of the preceding subsection, we first examine the function of §2-1-21(a) in the context of the just compensation issue.

The final sentence of §2-1-21(a) provides that appeal from the denial of approval to alter the character of a wetland may be taken to the Superior Court.[3] The formal

---

[3]The Legislature clearly intended to grant the right of appeal to any aggrieved landowner regardless of whether it was the director in the exercise of his independent judgment or the municipal council who decided to disapprove the proposed alteration. In the latter situation, however §2-1-21(a) does not specify whether an appeal should be taken directly from the council's decision or from the director's denial implementing the municipality's decision. Rather than countenancing two separate procedures, we feel that where the municipal council has disapproved an alteration, the formal denial should come from the director and may be appealed in due course. This denial must include the council's findings of fact and statement of reasons in order that meaningful judicial review not be foreclosed.

denial of such approval will in all cases come from the Department of Natural Resources, a body whose actions are governed by the provisions of the Administrative Procedures Act, G. L. 1956 (1969 Reenactment) §§42-35-1 to 42-35-18. Section 42-35-15 provides for judicial review of contested cases. It specifically gives an aggrieved party the right to raise all legal issues concerning the validity of the agency decision, including all relevant constitutional issues. Section 42-35-15(g)(1).

As the Act does not confer the power of eminent domain on the director, his decision to withhold approval of a proposed alteration may be attacked on appeal as a denial of any beneficial use of the landowner's property and a violation of the constitutional right not to have that property taken without just compensation. U. S. Const. amend. V; R. I. Const. art. I, §16. If this contention were upheld, presumably the action of the director would be null and void, and the landowner, as a matter of constitutional right, would be permitted to proceed with his project. Thus the Act, by incorporating the provisions of the Administrative Procedures Act, gives any landowner the opportunity to vindicate his constitutional rights in a judicial forum. By reserving to the courts the question of whether the Act as applied may be unconstitutional, §2-1-21(a) is clearly constitutional on its face.

The plaintiffs, however, base their arguments on §2-1-21(b). This subsection reads as follows:

> "Whenever a landowner shall be denied approval to alter a wetland by the director, or by the city or town within whose borders the wetland lies under subsection (a), the landowner may elect to have the state, or such city or town, acquire the land involved by petitioning to the superior court. If such court shall determine that the proposed alteration would not essentially change the natural character of the land, would not be unsuited to the land in the natural state, and would not injure the rights of others, the court

shall, upon determining the fair market value of the wetland, based upon its value as a wetland, direct the state, if approval were denied by the director, or the city or town, if approval were denied by such city or town, or both, if they concurred in such disapproval, to pay to the landowner the fair market value of the wetland; provided, however, that if the state, or the city or town, or both, where both are ordered to pay, shall decline such acquisition, the landowner may proceed to alter the wetland as initially requested. Any amount paid by the state hereunder shall be paid from any funds in the treasury not otherwise appropriated. If the director of natural resources alone denied approval under subsection (a) then the state shall make payment. If the city or town alone denied approval under subsection (a) then the city or town shall make payment. If both the state and the city or town denied approval then payment shall be shared equally by the state and the city or town."

While the intended impact of this subsection is admittedly ambiguous, this court must construe a duly enacted statute to be constitutional if such construction is reasonably possible. Giving this admonition due weight, we note that the subsection speaks in terms of "electing" to petition to the Superior Court. This language suggests that the Legislature viewed §2-1-21(b) as an alternative to the review procedure provided in §2-1-21(a), a non-essential addition to the statute supplementing, but in no way limiting, the landowner's right, already secured by the previous subsection, to raise all relevant constitutional claims.

An examination of the relative kinds of review offered by the two subsections reinforces this construction; they are in no sense duplicitous. Section 42-35-15(g) states specifically that the reviewing court shall not substitute its judgment for that of the agency on questions of fact. To overturn a decision on factual grounds, a landowner must establish that it is "clearly erroneous in view of the

reliable, probative, and substantial evidence on the whole record." Section 42-35-15(g)(5).

Earlier in this opinion we noted that the director would disapprove a landowner's application when he concluded that the proposed alteration would thwart the legislative mandate to preserve and protect wetlands in order that they continue to fulfill the functions specified in §2-1-18. We also noted that this determination inevitably invokes difficult factual questions of a scientific nature. With the scope of review provided by §42-35-15, the landowner faces a difficult task if he should wish to contest the findings made below as to the ecological impact of his proposed project. If, however, a landowner elects to petition under subsection 2-1-21(b), the Superior Court must make an independent determination of whether "* * * the proposed alteration would *not* essentially change the natural character of the land, would *not* be unsuited to the land in the natural state, and would *not* injure the rights of others * * *." (Emphasis added.) In effect these determinations constitute a de novo review of the essential questions of fact and law in the case. Should the court decide that the landowner is correct in his contention that the proposed use will not essentially alter the natural character of the land, and by implication that the director was incorrect in denying his approval, then the landowner must either be compensated or he must be allowed to proceed with his project. This compensation provision does not replace the judicial determination on appeal under §2-1-21(a) of what, in the event that the director was correct in his disapproval, would constitute just compensation for taking. Rather, it functions as a gratuitous offer by the state to purchase a landowner's property in some cases where the director is found to have overestimated the impact of a proposed alteration.

We anticipate that §2-1-21(a) will be the usual avenue

of appeal and that the provisions of §2-1-21(b) will be invoked only where an appeal under §2-1-21(a) proves unavailing or where the landowner allows the appeals period to run, thereby foregoing his opportunity to raise issues of a constitutional dimension. If then, §2-1-21(b) is so construed only as a limited supplementary remedy giving those landowners who have no interest in substantially altering the character of their wetlands an opportunity to gain de novo review of certain essential issues of fact and law, the Act does not on its face deprive any person of property without just compensation.

For the reasons stated, the plaintiffs' appeal is denied and dismissed, and the judgment appealed from is affirmed.

KELLEHER, J., dissenting in part and concurring in part. I disagree with that portion of the majority opinion which deals with the authority granted the legislative bodies of our various cities and towns, and I reluctantly concur with their view as to the thrust of the proviso which requires the denying authority to purchase the subject property but restricts the amount it must pay to the value of the property "as a wetland."

I cannot share the view that it is highly dubious, if not absurd, to read the pertinent provisions of §2-1-21 as giving a city or town council the absolute and unqualified right to give a "thumbs down" on any affirmative action taken by the Director of Natural Resources on a proposal which seeks to alter a wetland. My disagreement with my brothers is based upon the language of the statute and an examination of the travel of the wetlands legislation after it first made its appearance on the legislative scene during the General Assembly's 1971 session.

While we are bound to construe a statute so that it is constitutional, the usual canons of statutory construction are not applicable where the statute is clear and unambiguous. In such instances, the statute declares itself, and

its terms cannot be interpreted or extended; they must be applied literally. *Andreozzi* v. *D'Antuono,* 113 R. I. 155, 158, 319 A.2d 16, 18 (1974); *Smith* v. *Raparot,* 101 R. I. 565, 567, 225 A.2d 666, 667 (1967).

The original Wetlands Act was introduced on March 4, 1971.[1] The bill was numbered "S-434" and was referred to the Senate Judiciary Committee. The bill passed the Senate on April 15.[2] At that time it contained provisions several of which can still be found in §§2-1-21 and 2-1-22. These sections set forth the procedural and substantive rules which would govern the ultimate fate of one who might wish to change any property which fell within the statutory definition of what constituted a "fresh water wetland."

When S-434 passed the Senate, the sole and exclusive power to grant or deny the application was vested in the director, whose guide would be the public interest. The bill required the director, once he had received an alteration application, to notify the abutting landowners as well as a variety of municipal agencies, including the council, the conservation commission, and the planning and zoning boards, of the application's pendency. The director was also authorized to send a similar notice to such persons or agencies whose names are on a departmental mailing list because they have informed the director of their desire to be notified of the filing of all alteration applications. If any objection was received within 45 days of the mailing of the notice from any of those notified, the bill mandated a public hearing.

S-434 was transmitted to the House of Representatives on April 16 and referred to the Finance Committee.[3] On June 30 the committee reported the bill on to the floor

---

[1] Journal of the Senate, Vol. 83, No. 35 at 3.

[2] Journal of the Senate, Vol. 83, No. 57 at 4.

[3] Journal of the House of Representatives, Vol. 85, No. 58 at 7.

with recommendation that the House concur in its passage. The report was received and the bill placed on the calendar for July 1.[4] On that day, however, the bill was amended on the floor in two respects.[5] The proposed §2-1-21 was modified so that the Water Resources Board was not required to seek the director's approval, and the proposed §2-1-22 was revamped so that "* * * any person affecting inland wetlands or waters as described within §2-1-21 of this chapter" would file with the town council or the mayor of the municipality in which the wetlands were situated as well as the state Department of Natural Resources a written notice of his intention, together with the plans describing the proposed activity. The amendment retained the requirement of notice to the abutting owners and municipal agencies but specified that the requisite notice would be given and the public hearing would be conducted by the local authorities. The amendment provided that the council or the mayor could recommend such protective measures as may protect the public interest and transmit their recommendations to the director. Thereafter, the director had 6 weeks in which to make his decision.

The amended bill was then recommitted to the Finance Committee where the July 1 amendments were deleted and the original language proposed for §§2-1-21 and 2-1-22 was restored with one significant addition. The committee amended §2-1-21 by making an insertion between the provision mandating a denial by the director of an application if its grant would not be in the public interest and the stipulation providing for an appeal to the Superior Court from such a denial. The insertion specifically directed the withholding of a director's approval unless the project had been approved by the governing body of the municipality within which the wetland was located. The House passed

---

[4]Journal of the House of Representatives, Vol. 85, No. 96 at 5.

[5]Journal of the House of Representatives, Vol. 85, No. 97 at 9 and 10.

the committee's amended version of S-434 on July 9, 1971,[6] and 4 days later, on July 13, the Senate concurred in its passage.[7] Thereafter, the Governor signed the bill, and S-434 became law.

I believe, from the explicit language found in §2-1-21 and the deletions and additions made in the House of Representatives, that the blank check given the local legislatures regarding proposed changes in the local wetlands was purposeful. The General Assembly, in its effort to preserve the wetlands' "integrity and purity," intended that the final say on any alteration to a local wetland would be vested with the council no matter what occurred on the state level and that the municipal officers would not be bound to the public-interest standard which is to be the director's guideline.

Perhaps the General Assembly, when giving this unrestricted power to the local legislatures, believed that their actions were justified by a principle expressed by some courts: the Legislature, in delegating police power to the municipalities, need not fix guides and standards for its exercise. *LaRoque* v. *Board of County Commissioners*, 233 Md. 329, 196 A.2d 902 (1964). Assuming the validity of such a proposition, its applicability depends upon the function being delegated. If it is a legislative function, it may pass muster. If it is judicial, it is a nullity.

The test for distinguishing legislative and judicial action was made by Mr. Justice Holmes, speaking for the Court, in *Prentis* v. *Atlantic Coast Line Co.*, 211 U. S. 210, 29 S.Ct. 67, 53 L.Ed. 150 (1908). There he said:

> "A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to

---

[6] Journal of the House of Representatives, Vol. 85, No. 101 at 8.

[7] Journal of the Senate, Vol. 83, No. 102 at 2.

the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power." *Id.* at 226, 29 S.Ct. at 69, 53 L.Ed. at 158.

In applying this test, it has been recognized that it is the nature of the act performed rather than the name of the officer, board, or agency doing the act which determines whether it is judicial or legislative. *Gawith* v. *Gage's Plumbing & Heating Co.,* 206 Kan. 169, 179, 476 P.2d 966, 973 (1970); *Handlon* v. *Town of Belleville,* 4 N. J. 99, 104, 71 A.2d 624, 626 (1950). Here the power vested in the city and town councils is unquestionably judicial in nature. It follows that the proper exercise of this power is conditioned upon minimum requisites of due process being satisfied. Restriction on one's property is valid only if the restriction is reasonably related to the public health, safety, or welfare. *Town of Glocester* v. *Olivo's Mobile Home Court, Inc.,* 111 R. I. 120, 124, 300 A.2d 465, 468 (1973). Here the Wetlands Act contains no standard which requires that there be a reasonable relationship between the council's denial and the applicant's proposed use of his land. Furthermore, due process demands that before the council can deny an application, the applicant is entitled to notice and an opportunity to be heard. *Carroll* v. *Zoning Board of Review,* 104 R. I. 676, 248 A.2d 321 (1968). Consequently, the unfettered veto power given the city and town councils is unquestionably unconstitutional.

Turning to §2-1-21(b), my agreement with the majority on the thrust of this section is clouded with concern. Section 2-1-21(b) comes about as the result of an effort, begun in 1973, to make certain changes in the original Wetlands Act. The 1973 legislation, known as 73-H 6267, received rather expeditious treatment in the House of Representatives after being introduced there on April 5.[8] It

---

[8] Journal of the House of Representatives, Vol. 88, No. 50 at 4.

did not reach the Senate until the last legislative day of its 1973 session. When the Senate reached final adjournment on May 4, 73-H 6267 was placed on the president's desk[9] where it remained until the Senate returned for the 1974 session. On January 23, 1974,[10] the fourteenth legislative day of the session, the bill was recommitted to the Joint Committee on Environment.

One of the proposed changes, awaiting Senate vote, would have amended §2-1-21 so that a municipal legislature would have to register its disapproval on an alteration plan within 45 days after the director had mailed notice of its pendency before him. This change was prompted by a recognition of the hardship that would be suffered by a landowner who had to wait until the council decided when and what it was going to do. Another change amended §2-1-22 by empowering a property owner to ask the director to determine whether the proposed alteration came within the ambit of the Wetlands Act. Once the director received such a request, he or his duly authorized agent was required to make an on-site inspection of the project area. If it appeared that the proposal contemplated a "significant alteration" to the wetland, an alteration application would have to be filed and the necessary notices of its pendency given.

When 73-H 6267 emerged from the committee on May 3, it was apparent that it not only contained all the changes that had been approved by the House, but it had been modified in committee by adding subsection b to §2-1-21. Attempts to recommit the bill were unsuccessful, and 73-H 6267, as amended, passed the Senate by a 28 to 22 roll-call vote.[1] The House concurred in the amend-

---

[9]Journal of the Senate, Vol. 86, No. 65 at 46.

[10]Journal of the Senate, Vol. 88, No. 14 at 5.

[11]Journal of the Senate, Vol. 88, No. 68 at 12 and 13.

ment, and eventually the changes I have just discussed became part of the Wetlands Act.

It is obvious that §2-1-21(b) is a manifestation of the General Assembly's concern for a property owner whose interests must give way to the public interest in the preservation of the environment. However, the language used by the Legislature is by no means precise or clear. Apparently, the Legislature has afforded the landowner who does not want to continue his fight with those in the State House or the city and town halls a chance to obtain some compensation. If he wishes, the property owner can go to the Superior Court and seek the alternative relief delineated in §21(b). If he takes this route, however, he must satisfy the three conditions set forth in this subsection. If he does, he will have convinced the trial justice that the denial of his application actually amounted to an invalid exercise of the police power. However, by invoking §21(b), the property owner has waived his right to receive just compensation and will settle for a sum that represents the value of his wetland "as a wetland."

While I agree with the majority that §21(b) is a gratuitous offer, I can envision circumstances where a landowner who employs its provisions and gets paid for his wetland may discover that there has been a substantial diminution in the value of his property which adjoins the wetland. While the public interest in preserving flood plains and habitat for wildlife is commendable, it must not overshadow an awareness of the danger that the exercise of the police power can result in the "taking" of one's real estate just as if a condemnation plat had been filed.[12] If such an event occurs, the landowner should receive just compensation, which may not necessarily be the wetland value specified in §21(b). If, in enacting §21(b), the

---

[12]*See Aust* v. *Marcello,* 112 R. I. 381, 310 A.2d 758 (1973) (dissenting opinion).

Legislature desired the state or municipality to pay just compensation when either disapproves an alteration plan, I would respectfully suggest that it give this subsection a second look.

Mr. Chief Justice Roberts was present at oral argument but retired prior to consideration or decision of this case.

*Dominic F. Cresto,* for plaintiffs.

*Julius C. Michaelson,* Attorney General, *J. Peter Doherty,* Special Asst. Attorney General, *Tillinghast, Collins & Graham* (on behalf of The Providence Audubon Society of Rhode Island as Amicus Curiae), for defendant.