[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This civil action is an administrative appeal under G.L.1956 (1988 Reenactment) § 42-35-15 from a decision of a designee of the Director of the Department of Environmental Management (hereinafter "the Director"). The plaintiff, Profile Construction Co., Inc. (hereinafter "Profile") formally applied on July 14, 1989 to the department for permission to alter a fresh water wetland under G.L. 1956 (1987 Reenactment) § 2-1-22. After review by departmental staff in the fresh water wetlands section of the division of groundwater and fresh water wetland, the staff on August 28, 1990 denied the application. Thereupon, pursuant toP.L. 1989, ch. 508, § 1 and Rule 7.00 of theAdministrative Rules of Practice and Procedure for theDepartment of Environmental Management AdministrativeAdjudication Division for Environmental Matters (hereinafter "Administrative Rules"), the plaintiff requested an adjudicatory hearing. An Administrative Hearing Officer heard the plaintiff and the departmental staff on December 10 and 11, 1990. On February 21, 1991 the Hearing Officer rendered a Recommended Findings of Fact, Conclusions of Law and Order. She recommended that the plaintiff's application be approved with ten specific conditions. The application together with the record of the hearing and the recommended decision and order was next reviewed by a designee of the Director. Exercising the authority reposed in the Director by § 2-1-21 and the Rules and RegulationsGoverning the Enforcement of the Fresh Water Wetlands Act
(hereinafter "the Fresh Water Wetlands Rules") and Rule16.00(b) of the Administrative Rules, on April 3, 1991 he issued a Final Agency Decision and Order in which he denied the application. Profile commenced this action on April 30, 1991. On July 29, 1991 Rhode Island Builder's Association, Inc. was granted leave to intervene as a plaintiff. Original briefing was completed on February 21, 1992, and the matter was referred to this Justice for decision on June 30, 1992. The parties moved for leave to file supplemental briefs on the question of whether and how the judgment of the United States Supreme Court in Lucas v.South Carolina Coastal Council, 505 U.S. ___, 112 S.Ct. 2886, 120 L.Ed.2d 798, 60 U.S.L.W. 4842 (1992) applied to the issues in this case. Those motions are granted.
Profile is the owner of approximately 14 acres of land in the Town of West Greenwich. Its land bounds southerly on the northerly freeway line of Interstate Highway I-95 and westerly on the easterly line of Nooseneck Hill Road, Rhode Island State Highway Route 3. It proposes to develop a warehouse facility on the portion of its land nearest Interstate I-95, but it must have access to Route 3 to develop any portion of its land. A significant portion of its land is covered by part of a fresh water wetland called Mishnock Swamp, including all of its land bounding on Route 3. If Profile is to have any access to its land without crossing anyone else's premises for any purpose, because it is prohibited from accessing I-95, it must cross Mishnock Swamp, somewhere, somehow.
In order to avoid crossing the swamp itself, Profile acquired an easement from the owners of abutting property to its south on Route 3. It proposes to construct and install on the easement a 290-foot long, 24-foot wide paved roadway, together with retaining walls and landscape planting within the jurisdictional limits of the fresh water wetland. The fresh water wetland covers approximately 560 acres and Profile's construction will take place on approximately 0.31 acres of the wetland almost all within a fifty-foot perimeter, or upland, area in the western corner of the wetland.
Disagreement among the experts as to the impact of Profile's proposal on the wetland accounts in part for the Hearing Officer's recommendation to approve the proposal with conditions and the Director's decision to deny it unconditionally. A brief review of the pertinent statutes and regulations is necessary to understand the conflicting positions. This case involves one aspect of the tension between environmental preservation of natural resources and economic development of land as private property.
We begin with the law enacted by the General Assembly. No person is permitted to alter the character of any fresh water wetland, as defined by statute, without first obtaining the approval of the Director. The Director must deny such approval if in his or her opinion that approval would not be in the best public interest. § 2-1-21(a). This enactment was held by the Supreme Court to be constitutional over challenges on the grounds that it is an invalid delegation of legislative authority, that it constitutes a denial of equal protection of the law or that it deprives an affected landowner of property without just compensation. J.M. Mills, Inc. v. Murphy, 116 R.I. 54,352 A.2d 661 (1976).
In upholding the delegation of authority in § 2-1-21(a) to the Director, the Court held:
 "We conclude that the Legislature has thus enacted into law the general policy of preserving fresh water wetlands in order that the functions of these wetlands as enumerated in § 2-1-18 may continue to be fulfilled. Pursuant to this authoritative statement in the best public interest, an administrative official has been delegated the power to make case-by-case
determinations of whether a proposed project would significantly inhibit the present valuable functions of wetlands." Id., at 63-4; 352 A.2d, at 666. (Emphasis supplied.)
 Section 2-1-18 recognizes the importance of fresh water wetlands in many respects, but for the purposes of deciding this case the Director focused on the value of such wetlands as wildlife habitats and recreational areas. The section also recognizes that the protection of fresh water wetlands from "random, unnecessary and/or undesirable" disturbance or destruction is in the best public interest. Section 2-1-19
declares that it is the public policy of this State to preserve the purity and integrity of the swamps, marshes and other fresh water wetlands of the state. With these ringing statements of intent and public policy it is plain that the Director's authority to allow alterations to fresh water wetlands is tightly circumscribed. Only when a proposed alteration is shown not to be a random or chance disturbance or destruction of wetland and is necessary and desirable can the Director permit an alteration. Otherwise, the Director must exercise the delegated authority to preserve and protect the purity and integrity of the wetland.
Section 2-1-20(d) expressly includes within the definition of "fresh water wetlands" that area of land within fifty feet (50') of the edge of any bog, marsh, swamp or pond. The precise designation of a fifty-foot margin bespeaks a legislative compromise between environmental protection and economic development. Ecological considerations, taken alone, might prescribe a margin of one hundred eighty feet, or even three hundred feet according to the testimony of Brian Tefft, whose qualifications as an expert were stipulated. Developmental considerations would strictly limit protection to the boundaries of any wetland and no further. See Transcript, December 11,1990, pp. 239, 248-51, 260. The Director is preeminently correct in holding that the fifty-foot margin or buffer is to be accorded the same protection as the swamp, bog or other wetland, itself. No lesser concern may be shown under the law for the marginal upland than for any other part of the statutory wetland.
In his final decision, the Director repeated a portion of the rationale of an earlier decision with regard to his refusal to make any distinction between "biological wetlands" and their associated "wetland buffers." This interpretation is really no more than an affirmation to follow the plain and unambiguous language of the statute. This affirmation is in no way rule-making. The legislature has made the rule. The Director is simply following the rule.
He also repeated a holding from that earlier decision regarding the application of certain Fresh Water Wetland Rules, which had been promulgated under the authority of § 2-1-20.1.Rule 5.03(b) and (c) captioned: "Policy for Denial of Approval", reads as follows in pertinent part:
 "(b) Approval of a proposed alteration of a wetland will be denied by the Director, if, in his opinion, such alteration is inconsistent with the public interest and public policy as stated in Sections 2-1-18 and 2-1-19 of the Act and Section 1.00 of these regulations.
 (c) Approval of a proposed alteration to a wetland will be denied by the Director, if, in his opinion, such alteration will cause random, unnecessary and/or undesirable destruction of fresh water wetlands including but not limited to:
 * * *
 (6) Degradation of the natural character of any "unique" wetland (see Section 7.06).
 (7) Reduction of the value of any "valuable" wetland (see Section 7.06)."
Profile has agreed that the wetland it proposes to alter is both a "unique" and a "valuable" wetland as defined in Rule 7.06. As a consequence, this wetland is plainly entitled to the heightened scrutiny required by Rule 5.03(c)(6) and (7). That Rule clearly provides that any degradation of the natural character of any unique wetland or any reduction of the value of any "valuable" wetland will cause random, unnecessary and/or undesirable destruction of fresh water wetlands.
To contend that the construction of a 290-foot long, 24-foot wide asphalt paved roadway in a fresh water wetland does not "alter" the wetland would deprive the word "alter" of any usefulness in the English language. Nor can anyone reasonably fluent in English argue that the retaining walls and vegetative plantings proposed to mitigate the impact of the roadway are not themselves alterations of the character of this wetland. The real issue in this case on the question of approval or denial of the application is whether or not the applicant has so mitigated the impact of the proposed alteration that the natural character of the wetland has not been degraded and the value of the wetland has not been reduced. The applicant has the difficult burden of proving a negative.
The department has adopted a common-law administrative doctrine that an applicant who proposes to alter a wetland may mitigate the impact of the alteration so that it is no longer "random, unnecessary and/or undesirable", or does not degrade the natural character of a unique wetland or reduce the value of a valuable wetland, in order to avoid the denial mandated by Rule5.03. See for example, Rule 7.07.
In this legislative and regulatory setting the Director adverted in his final decision in this case to further portions of his earlier decision in which he found as a fact that the planting of a cultivated lawn in a natural wetland as a buffer does not mitigate the impact of any other alteration and is itself a reduction in the value of a "valuable wetland." In addition, in this final decision the Director echoed an earlier ruling that:
 "The planting of woody vegetation and other native plants along the biological wetland edge as a means of replacing naturally occurring and undisturbed jurisdictional wetland (buffer) wildlife habitat lost to alteration and/or to mitigate against the adverse impacts of or encroachment on the biological wetland associated with such alteration is at best a stopgap and inadequate measure. Such measures in no way compensate for nor do they justify the permanent alteration of valuable jurisdictional wetland (buffer). For these reasons, where the Department concludes that a proposed alteration is prohibited pursuant to Rule 5.03(c)(7), the proposed installation of a vegetative barrier provides insufficient mitigating value to overcome the regulatory prohibition."
The plaintiffs, both Profile and the Builders' Association, complain that by incorporating these rulings from an earlier decision in the decision in this case the Director is applying an administrative rule of general application which has not been lawfully adopted pursuant to § 42-35-3. They argue that by these rulings the Director has in effect promulgated the following administrative regulation: "Thou shalt never alter a `valuable' and `unique' fresh water wetland." Brief of ProfileConstruction, p. 15.
Rhetorical elegance is not a requirement of a sound administrative decision. It is enough if the administrator's rationale is clear. Rules 5.03(c)(6) and (7) require the Director to deny alterations which degrade the natural character of a "unique wetland" or reduce the value of a "valuable wetland." The Director has no choice in such a case. Obviously, there can be some cases where a proposed alteration to one of these special wetlands does not degrade the natural character of the wetland or reduce its value. In such a case, the Director must look to other criteria for deciding whether to approve or deny an application, but he cannot rely on Rule 5.03(c)(6) or(7). What could well be the holding here, as the defendant argues in its brief, is that as a matter of fact in this case a cultivated lawn or buffering vegetation either violate Rule5.03(c)(7) themselves, or do not mitigate the impact of other alterations. This could be a factual ruling, not a rule.
Since the mitigation doctrine is one which was administratively created without engaging in formal rule-making, it should be able to be modified without engaging in administrative rule-making. The mitigation doctrine is really no more than an aid to administrative fact-finding. If an applicant can show that it has so mitigated the impact of an alteration to a wetland that in fact it no longer violates Rule 5.03 it will be permitted by the director. The Director is not thereby relieved from making factual decisions on a case-by-case basis. The Director must still continue to consider and weigh evidence of mitigation.
All that might have been held here is that the cultivated lawns and the landscaped plantings proposed here do not mitigate the alterations proposed in this application, as they did not in the earlier case. That the reference to the earlier decision might not be any form of general rule-making is demonstrated by the following finding of fact in the director's decision:
 "25. The planting of a vegetative `screen' of the sort proposed by this applicant provides an inadequate level of mitigation or compensation for the destruction and/or displacement of the undisturbed and naturally vegetated upland buffer associated with the `valuable' and `unique' Mishnock Swamp wetlands complex."
The Director here found that the particular screen proposed by this particular applicant failed to mitigate or compensate adequately for the specific destruction and displacement of the specific wetland. Whether or not there was substantial evidence to support this finding when the entire record is considered will be taken up subsequently.
The Director also found, as a fact apart from any ruling regarding lawns and landscaping, that:
 "26. The proposed project will adversely impact wildlife diversity and production in the Mishnock Swamp wetlands system. It will thereby reduce the value and degrade the natural character of a wetland which is both `unique' and `valuable' as those terms are employed in Wetlands Rules 5.03 and 7.06."
This finding, alone, if supported by the evidence, could be sufficient under the statute and regulations to compel the Director to deny the application. That would be so, whether the Director's reference to his earlier decision was rule-making or not.
Having said all of the foregoing, it is inescapable that the director concluded as a matter of law that:
 "9. The Final Agency Decision and Order in Karbassi as hereinbefore cited, unambiguously articulates this Agency's controlling interpretation of Rule 5.03(c)(7) as prohibiting without qualification the alteration of undisturbed and naturally vegetated wildlife habitat within either the biological or upland buffer components of a `valuable' wetland.
 10. Karbassi also articulates the Agency's controlling interpretation of Rule 5.03(c)(7) which is that the planting of vegetative screens provides a level of mitigation or compensation for the destruction and/or displacement of undisturbed and naturally vegetated upland buffer associated with `valuable' wetlands which is insufficient to overcome the Rule 5.03(c)(7) prohibition (sic) against such destruction and/or displacement."
While this Court is bound by the Director's findings of fact, if supported by substantial evidence, considering the record as a whole, it is not bound by the agency's conclusions of law.Narragansett Wire Co. v. Norberg, 118 R.I. 596, 607,376 A.2d 1, 6 (1977). Since the agency has not promulgated this "controlling interpretation" of Rule 5.03(c)(7) as a rule under the authority of § 2-1-20.1 following the requirements of §42-35-3, it cannot be a "legislative" rule with the effect of law. It can only be what has been described as an "interpretive" rule in Lerner v. Gill, 463 A.2d 1352, 1358 (R.I. 1983), which Courts may decide whether or not to enforce.
This Court is satisfied that the Director's "controlling interpretation" of Rule 5.03(c)(7) defies the plain language of the Rule. That Rule cannot reasonably be read "as prohibitingwithout qualification" the alteration of any aspect of a "valuable" wetland. It prohibits only those alterations which on a case-by-case analysis the Director finds reduces the value of any "valuable" wetland as defined. If the alteration of a particular "valuable" wetland, even an "undisturbed and naturally vegetated wildlife habitat" can be accomplished, say by the division of parks and recreation, the Rule does not provide for prohibition without qualification. See Sullivan v. Zebley,493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). The Director must continue to make case-by-case decisions in accordance withJ.M. Mills v. Murphy, supra.
This Court is also satisfied that the Director's "controlling interpretation" of Rule 5.03(c)(7) that no vegetative screen can ever mitigate or compensate even the slightest destruction and/or (sic) displacement of "undisturbed and naturally vegetated upland buffer associated with `valuable' wetlands" is not reasonably based on the language of Rule 5.03(c)(7). Rule5.03(c)(7) clearly indicates that some alterations of `valuable' wetlands will reduce the value of those wetlands and that some will not. The Director must decide on a case-by-case basis in any particular instance which is which. If he or she wishes to promulgate a blanket prohibition, as is implied in paragraph 10 of the conclusions of law, he or she must either persuade the General Assembly to amend the law or promulgate a lawful "legislative" rule.
Since this Court cannot tell from the record before it whether the director's decision was based on the evidence in the record with respect to Rule 5.03(c)(7), as construed by this Court, or was based on the erroneous application as a matter of law of the "controlling interpretation" by the Director, the case must be remanded to the Director for reconsideration without applying the "controlling interpretation" of Rule 5.03(c)(7),
as articulated in the so-called "Karbassi case." NLRB v.Enterprise Ass'n of Steam Pipefitters, 429 U.S. 507, 529 n.9, 97 S.Ct. 891, 51 L.Ed.2d 1 (1977); ICC v. Clyde SteamshipCompany, 181 U.S. 29, 32-33, 21 S.Ct. 512, 45 L.Ed. 729 (1901).
The Final Agency Decision and Order filed on April 3, 1991 will be vacated, and the record in this case will be remanded to the Director for reconsideration, without application of the "controlling interpretation" articulated in the so-called "Karbassi case", in the light only of the evidence presented in this record. The Director will comply with all provisions of §42-35-12. This Court will retain jurisdiction of this proceeding pending such reconsideration, in the event the plaintiffs wish to pursue a further appeal from the Director's decision after reconsideration. If the plaintiffs wish, they may raise the question again after reconsideration by the Director as to whether their claim for damages for inverse condemnation may be heard on administrative appeal from a regulatory decision, alleged to be confiscatory. See Landfill Resource Recovery,Inc. v. Department of Environmental Management, 512 A.2d 866
(R.I. 1986); Milardo v. Coastal Resources Management Council,434 A.2d 266, 270 (R.I. 1981). See also, Miller v. CoastalResources Management Council, Providence County Superior Court C.A. No. P.C. 89-2726, Decision filed December 13, 1991.
The plaintiffs shall present a form of judgment for entry by the Court on notice to the defendants.