DECISION
Plaintiffs appeal from a Rhode Island Department of Environmental Management ("DEM") Decision and Order ("Decision") of August 2, 1991, which denied the plaintiffs' request for a permit to alter fresh water wetlands. Plaintiffs seek relief and/or judgment in six counts: Count I (judicial review of DEM's denial of the wetland permit, under the Administrative Procedures Act ("APA"), § 42-35-1 et seq. R.I.G.L.); COUNT II (an appeal purportedly pursuant to § 2-1-21(a) of the Fresh Water Wetlands Act); Count III (an appeal purportedly pursuant to § 2-1-21(b) of the Fresh Water Wetlands Act); Count IV (a claim for inverse condemnation under the Rhode Island Constitution; Count V (a claim for inverse condemnation under 42 U.S.C. § 1983); and Count VI (a claim for inverse condemnation under the United States Constitution).
Upon review of the pleadings and the record, the Court finds that only Count I of plaintiffs' case is properly before the Court for decision on appeal. Neither Count II nor Count III invites appellate review under the circumstances presented in this matter. See, J.M. Mills, Inc. v. Murphy, 116 R.I. 54,352 A.2d 661 (1976). Counts IV, V, and VI, alleging claims for inverse condemnation, are also not properly before the Court; and, even if those claims were somehow appropriate for consideration in this appellate action, there is insufficient record evidence to adjudicate them. See, Santini v. Lyons,448 A.2d 124, 129 (R.I. 1982); Milardo v. C.R.M.C., 434 A.2d 266, 270 (R.I. 1981).
Accordingly, the Court shall address only the allegation contained in Count I of the plaintiffs' complaint, namely, whether or not DEM's decision to deny the wetlands permit was in error. For the reasons set forth below, the Court finds no error in that decision.
Review of an administrative agency's decision by the Superior Court is governed by § 42-35-15(g), R.I.G.L., which provides:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This legislation precludes a reviewing court from substituting its judgment for that of the agency regarding the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles,543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of InterestCommission, 509 A.2d 453, 458 (R.I. 1986). Accordingly, this Court's review is limited to determining whether substantial evidence exists to support the Commission's decision. NewportShipyard v. Rhode Island Commission for Human Rights,484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897 (quoting Caswell v. George Sherman Sand Gravel Co.,120 R.I. 1981, 424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than did the agency. Berberian v. Dept. of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v.C.R.M.C., supra, 434 A.2d at 272. A reviewing court is, however, free to determine the applicable law in connection with the facts presented. Carmody v. R.I. Conflict of Interest Commission,supra, 509 A.2d at 458.
The plaintiffs own property in Cranston, Rhode Island. The property comprises approximately 6,000 square feet and borders the Pawtuxet River. On July 3, 1988, the plaintiffs applied to DEM for a permit allowing them to alter fresh water wetlands in order to construct a single-family dwelling with a driveway. This proposed construction would have disturbed approximately 2,860 square feet of wetlands. On February 24, 1989, the DEM denied that application, concluding that the proposed alteration would result in an undesirable reduction of fresh water wetlands and wetland-wildlife habitat. The DEM noted further that the proposed project would diminish valuable wetlands and "negatively impact on the aesthetic and natural character of the undeveloped wetland and buffer zone."
Subsequently, on May 21 and 22, 1990, an ajudicatory hearing was held on the permit denial. At that hearing, plaintiffs presented evidence in an effort to support their claim that they were entitled to the requested permit. Their evidence indicated,inter alia, that unwanted trash-dumping had occurred on the property, that they had seen no one use the property for recreational purposes, that the local zoning board had approved the proposed construction, and that the value of the property with the contemplated structure would approximate $100,000. The plaintiffs also presented expert testimony from Dr. Mark Gould, a biologist, in an attempt to demonstrate that the requested alterations would not adversely affect wetlands or wetland-wildlife habitat. Dr. Gould conceded, however, that construction of the proposed project would, in fact, result in wetland loss and would impact the ecology of the wetland area. The plaintiffs also elicited testimony from Carmine Aspirino, a DEM civil engineer, who acknowledged that, although surface grading, drainage and runoff would not result adversely, he could not forecast "what could happen biologically." Tr. at 151.
The DEM presented testimony from Brian Tefft, Supervisor for applications within the Division of Groundwater and Fresh Water Wetlands and an expert in the area of wetlands ecology, wildlife habitat, and recreational evaluation, assessment, and environmental impact. Mr. Tefft testified that during his visits to the site he had observed numerous wildlife species and/or evidence of wildlife species. He stated that the area in question has the capability to support a wide range of wildlife. He further noted the need to consider the wetlands complex as a whole and concluded that the proposed construction on this particular site would have an adverse impact on the wildlife habitat associated with the Pawtuxet River wetlands complex on this property.
On July 23, 1991, the hearing officer issued the Decision and Order recommending denial of the plaintiffs' application. The DEM Director concurred with the hearing officer's conclusions and on August 2, 1991, affirmed the hearing officer's decision to deny the permit request. That decision concluded that:
. . .
 3. Approval of this application will cause the undesirable destruction of a valuable freshwater wetland and pursuant to Section 5.03(a) of the Rules and Regulations Governing the Enforcement of the Freshwater Wetlands Act, the application must be denied.
 4. The proposed alteration is inconsistent with the public interest and public policy as set forth in Section 2-1-18 and 2-1-19 of the Freshwater Wetlands Act and Section 1.00 of the Rules and must, therefore, be denied pursuant to Section 5.03(b) of the Rules.
 5. The proposed alteration will cause the reduction of the value of a wetland determined to be "valuable" which is capable of supporting recreation by the general public pursuant to Section 7.06(b)(1) of the Rules and must, therefore, be denied pursuant to Section 5.03(c)(7) of the Rules.
 6. Approval of this application to alter a freshwater wetland would not be in the best public interest as set forth in Section 2-1-19 of the Rhode Island General Laws.
While the Court has the power to reverse or modify the agency's decision if it is not supported by substantial evidence,see, § 42-35-15(g)(5), R.I.G.L., that power must be balanced against the substantial deference due agency hearing officer decisions. Environmental Scientific Corp. v. Durfee,621 A.2d 200, 207-08 (R.I. 1993). The hearing officer is viewed as sitting at the mouth of a "funnel-like system" set up by the legislature to evaluate wetlands-related disputes, and his or her factual determinations will not be reversed unless those determinations were clearly wrong. Id. at 206-207.
The plaintiffs argue that the construction of a single-family dwelling on the property is both a compatible and appropriate use of the subject property, and that the proposed alteration would have no direct impact on the wetland habitat and would not result in the destruction of any wetland flora or fauna. They claim that the only negative impact would be an encroachment on the 200 foot "wetland buffer," a similar encroachment immediately adjacent to the targeted site.
The record discloses that the DEM conducted a thorough evaluation of the plaintiffs[1] proposal and the site in question, and that the agency concluded that the proposed alteration was impermissible. The hearing officer's determination on this issue is supported by the testimony of Brian Tefft, who testified extensively as to the evaluation performed and the conclusions reached. Upon review of the record, the Court cannot conclude that the hearing officer's acceptance of that testimony was clearly erroneous.
The plaintiffs also complain that the hearing officer erroneously found that the proposed use would result in a loss of wetland-wildlife habitat, and they assert that the detrimental impact of the project would be minimal and would have a substantial beneficial effect on the wetland habitat. Again, the testimony of DEM's expert, Brian Tefft, belies the plaintiffs' contentions. Mr. Tefft testified that the proposed use would, indeed, negatively impact the wetlands and wildlife habitat at the site, both during and after construction, and that the proposed use would have an adverse impact on areas beyond the construction site. The Court finds that the hearing officer's conclusion on this issue is amply supported by substantial evidence in the record. While conflicting expert testimony was presented, the Court does not in any way find that the hearing officer's determination on this issue was clearly wrong. See,Lowry v. Faraone, 500 A.2d 950, 952 (R.I. 1985) (upholding factfinder's decision where there was conflicting expert testimony; findings not clearly erroneous).
The plaintiffs also claim error in the hearing officer's finding that the proposed use would result in a reduction in value of recreational environment and undeveloped wetland. Under DEM Rule 7.06(b), "Valuable Recreational Environment" is defined as:
 ". . . a relatively natural or undeveloped area which, in its natural state, is capable of supporting recreation by the general public. Typical recreational activities would include, but not be limited to: education, hunting, fishing, trapping, hiking, canoeing, ice skating, skiing, bird watching and nature photography."
Under DEM Rule 5.03(c)(7), reduction in value of a valuable recreational environment is grounds for denial of proposed wetlands alteration. On this issue, the hearing officer accepted the testimony of DEM's expert Tefft, rather than the testimony of the plaintiffs' experts. Mr. Tefft concluded that the additional construction and encroachment from the proposed project would, in fact, reduce the valuable wetland recreational environment provided by this wetland complex. The hearing officer was not clearly wrong in crediting Mr. Tefft's expert opinion on this issue.
After review of the entire record, the Court finds that the decision of the DEM denying plaintiffs' application is supported by substantial evidence and that the rights of the plaintiffs have not been unlawfully prejudiced. Accordingly, that decision is affirmed.
Counsel shall submit an appropriate order for entry.
[1] The DEM has amended its regulations since the plaintiffs' hearing. While these amendments do not alter the courts analysis, all references herein are to the then-existing regulations.