MAE L. GILLOGLY *vs.* NEW ENGLAND TRANSPORTATION COMPANY.

FEBRUARY 26, 1948.

PRESENT: Flynn, C. J., Capotosto and Condon, JJ.

CAPOTOSTO, J. This action of trespass on the case for negligence was tried in the superior court before a justice thereof sitting without a jury. He decided for the plaintiff and fixed the damages at $12,000. The case is before us on defendant's exceptions under which it claims that the decision is against the law and the weight of the credible evidence; that the trial justice erred in the admission and exclusion of evidence; and that the damages are excessive.

The following facts are either undisputed or clearly established by the evidence. The plaintiff, an unmarried woman about fifty-three years of age, was a hairdresser by trade and the owner of two beauty shops, so called, one in the city of Providence and the other in Narragansett Pier in this state. She was also chairman of the state board of hairdressing, the duties of which office she performed in addition to her work as an operative in one or the other of her shops. On January 28, 1942 plaintiff paid her fare in Providence and became a passenger on a Boston bound bus of the defendant, a common carrier of passengers. After leaving the state line at Pawtucket, Rhode Island, the bus traveled north on the easterly lane of a four-lane cement highway until it reached North Attleboro, Massachusetts, where an automobile sedan, which was traveling south on that highway, collided with it.

The weather and road conditions were bad. It was snowing or sleeting, and the highway was icy and slippery. The bus had no chains on its wheels. At the place of the accident and easterly of the easterly side of the northbound cement lane of the highway there was a space that extended some five feet to a series of rectangular cement posts, about five or six inches thick, and set at intervals of approximately ten feet, through which a metal cable was inserted to serve as a guard rail. Beyond these posts there was a drop to lower land. When the bus came to a stop after the accident,

seven of the posts had been knocked down. The bus was then leaning towards its right at a pronounced angle, with its rear wheels on the easterly shoulder of the highway and its front wheels down the incline. At that time the sedan, facing east, was stopped crosswise on the westerly lanes of the highway. The damage to the bus was confined to its left front corner, while the top of the sedan was torn off and its right side almost entirely demolished.

The evidence is in serious conflict as to the speed and control of the bus and as to the real cause of the accident. The evidence for the plaintiff was to the effect that the bus was traveling at a fast rate of speed, estimated at some 45 or 50 miles an hour, swaying from side to side and skidding on the icy highway; that, although the vision of the plaintiff and the other passengers who testified for her was obscured to a considerable extent by snow on the windows of the bus, they saw it pass a number of cars going in the same direction and almost collide with one of them; that none of these witnesses saw the sedan before the accident; that suddenly the bus lurched heavily to its right and came to a stop at the place and in the manner hereinbefore described; and that the plaintiff was thrown violently to the floor of the bus and seriously injured. We shall refer to plaintiff's injuries later.

In general terms the defendant's claim was that, while the bus was traveling at a moderate rate of speed on its extreme right of the highway, the sedan suddenly skidded across the highway and its right side struck the left front corner of the bus. In other words, the defendant's contention was that the accident was unavoidable and without any negligence on its part. Under such a claim a brief statement of certain testimony for the defendant is advisable.

The driver of the bus testified that it did not sway or skid at any time; that the only car he remembered passing shortly before the accident was an army car, which was moving at not more than 20 miles an hour; that he was

then traveling about five miles an hour faster than the army car; that just prior to the accident his speed did not exceed 25 miles an hour; and that he did not know how far the sedan was from the bus when he saw it begin to skid, as his attention was then centered on operating the bus to avoid an accident. He further testified that as soon as he saw the sedan go into a skid he pulled over on to the easterly shoulder of the highway and began applying the brakes; that he ran some 75 feet on the shoulder before he struck the posts at the side of the highway; and that he did not know how many of those posts were knocked down before the bus came to a stop. This testimony was supported in part by that of two passengers, one of whom fixed the speed of the bus merely as moderate, and the other at not more than 30 miles an hour.

The defendant also called as a witness its district claim agent who testified that, shortly after the accident, he interviewed the plaintiff and three of her witnesses; that each one told him how the accident happened and that, in their presence, he reduced to writing their respective statements; that the plaintiff and two of those witnesses signed and swore to the written statements, but that the other witness refused to sign on objection by her husband. The statements were all admitted in evidence and tended to contradict the testimony of the plaintiff and her witnesses. However, each of these persons explained the circumstances in which they were interviewed by defendant's claim agent and specifically denied saying certain things incorporated in the statements. A similar situation arose with reference to the testimony of a sergeant of the North Attleboro police respecting oral statements made by some of plaintiff's witnesses at the scene of the accident.

Captain Kenneth B. Newton, who was in the army car mentioned by the bus driver, testified for the defendant by deposition. The material part of his testimony was that he was traveling at about 20 miles an hour when the bus passed his car at about 30 miles an hour; that, shortly

after the bus had passed, he noticed the sedan, which was coming from the opposite direction, go into a skid and veer towards his side of the road; that the sedan was then 200 or 300 feet from the bus; that the right side of the sedan struck the left front of the bus; that when he stopped at the scene of the accident he assisted several of the passengers and the driver out of the bus; and that he took one of those passengers, a woman whom he did not know, to a hospital in the army car. The woman in question was the plaintiff.

Alfred Ricci, a passenger in the sedan, testified for the plaintiff in rebuttal. His testimony in substance was that the sedan skidded on to the first and second lanes for northbound traffic when the bus was 200 or 300 feet away; that after the skid had stopped, the sedan, which was then in the path of the bus, moved straight ahead for some 200 feet before the bus struck it in the rear.

On this evidence as to defendant's liability to its passenger, the trial justice found, among other things, that the defendant was guilty of actionable negligence. The rescript contains a number of findings of fact on this issue, the most pertinent of them being that *before and at the time* the sedan began to skid, and for a period thereafter, the bus was being operated at an excessive and dangerous rate of speed in the existing circumstances, and that during such time the bus was not under reasonably effective control. On such findings he held that the conduct of the bus driver was a substantial and proximate cause of the accident as far as the plaintiff passenger was concerned.

The defendant contends, first, that the trial justice misconceived or overlooked material evidence; and, secondly, that he applied the wrong rule of law. We shall consider these contentions in the order stated keeping in mind that the plaintiff was a passenger on the bus. As to the facts, the defendant in substance argues that if the trial justice had given due consideration to the testimony of its witnesses, and particularly the portion thereof in contradiction

of the plaintiff and her witnesses, he could not have found actionable negligence. In short, it argues that the evidence for the plaintiff was thoroughly discredited. We cannot agree with this contention. Reading the rescript of the trial justice in the light of our understanding of the evidence, it is clear to us that he had all the evidence in mind in arriving at his conclusion on the issue of defendant's liability. He fairly reviewed the testimony of all witnesses and, although he did not set forth in detail defendant's impeaching testimony, he referred to such testimony in the following language:. "The defendant sought to impeach the testimony of the plaintiff and of some of the plaintiff's witnesses by testimony of contradictory statements made by them and given to an investigator for the defendant and to a police sergeant of the Town of North Attleboro. In passing on the weight of the evidence and its reliability, the court has taken these impeaching statements into consideration and also the circumstances under which they were made."

The defendant further contends that the trial justice should have completely rejected as unworthy of belief the testimony of Ricci, the passenger in the sedan, as it was conjectural and contradictory in itself. Ricci's testimony may not be entitled to great weight, but, when all the evidence is taken into consideration, we cannot say that the trial justice was required to reject it completely as unworthy of belief.

◼ The defendant, citing *Rossi* v. *Ronci,* 63 R. I. 250, and *Longo* v. *Monast,* 70 R. I. 460, further urges that the rule respecting the trial justice's appraisal of the credibility of a witness who testifies in open court does not apply when testimony is given by deposition, as the army captain did in the instant case. We agree with the defendant that in the latter instance this court is in as good a position as a trial justice in passing upon the credibility of such testimony; but we cannot agree with its contention that in the circumstances of this case the captain's testimony

necessarily and effectively destroyed the credibility of all the evidence for the plaintiff. When the deposition is fairly read as a whole, it is open to reasonable inferences favorable to the plaintiff.

The defendant also contends that the trial justice committed reversible error in allowing Ricci to testify in rebuttal, arguing that, since he was at all times available, he should have testified in chief, and that by allowing him to testify in rebuttal the plaintiff was given an unfair advantage over the defendant, as all the latter's witnesses, with the exception of the operator of the bus, had by that time been excused. This argument is unsound for several reasons. It is well established that it is within the power of a trial justice to regulate the order of proof. In his discretion he may admit competent evidence at any stage of the trial. *State* v. *Falcone*, 41 R. I. 399. The aim of the court in regulating the course of proof in each case should be to promote justice and not to prevent the admission of material evidence, if the party offering such evidence is not guilty of trickery and his adversary is not in fact prejudiced by the belated presentation of such evidence. *Souza* v. *United Electric Rys.*, 49 R. I. 430, 433.

Furthermore, the defendant not only claimed that the bus was being operated at a proper speed and with reasonably effective control, but it also introduced new evidence tending to establish that the accident was due solely to the sudden skid of the sedan, which caused the operator of the bus to divert his course in an attempt to avoid an accident. The plaintiff was entitled to meet this claim. We find no error in the admission of Ricci's testimony to rebut such evidence. See *Souza* v. *United Electric Rys.*, supra; *O'Donnell* v. *United Electric Rys.*, 48 R. I. 18, 22.

There is no merit in defendant's claim before us that it was prejudiced by the fact that its witnesses, with the exception of the driver, had been excused when the rebuttal testimony in question was given. As far as appears

of record, the release of its witnesses was a voluntary act on its part. Moreover, if it then apprehended any disadvantage therefrom, it might have asked for a continuance, which it failed to do, to secure the return of necessary witnesses.

██ Defendant finally contends that the trial justice misconceived the law applicable in this case. He argues that the speed of the bus, assuming that it was excessive, was not the proximate cause of the accident. Reviewing and contrasting once more the evidence of both sides and laying great stress on its impeaching testimony, the defendant concludes that the bus driver was confronted with a sudden emergency when the sedan skidded in the path of the bus, and that he then did everything reasonably possible to avoid a collision. This contention is based on the theory that the skidding of the sedan was the *sole* proximate cause of the accident. We do not agree that this is the only conclusion that can reasonably be drawn from the evidence, which was conflicting, and therefore its credibility was, in the first instance, for the trial justice. As we have already stated, we are unable to say that he was clearly wrong in finding that the excessive speed and lack of control of the bus were efficient contributing factors and therefore, as to plaintiff passenger, a proximate cause of the accident.

██ In order for a common carrier to be in the exercise of due care towards its passengers, the carrier is bound to exercise for their safety the highest degree of care and foresight consistent with the orderly conduct of its business with respect to all matters under its control. *De Nicola* v. *United Electric Rys.*, 55 R. I. 402; *Adams* v. *United Electric Rys.*, 46 R. I. 312. Furthermore, it is fundamental that there may be concurring proximate causes that contribute to an accident. In the instant case, the negligent conduct of the defendant, as found by the trial justice, was not rendered remote merely by the intervention of a second cause. A person who owes a legal duty to

another is bound to foresee that which is probable, that is, what according to the usual experience of mankind is likely to happen. *Prue* v. *Goodrich Oil Co.,* 49 R. I. 120, 123.

 There is, of course, no liability when injury is inflicted as the result of natural causes or of the negligence of a third party which directly and exclusively create a situation not preventable by any reasonable foresight. In such a situation the accident resulting in injury is unavoidable. But the rule is otherwise where the carrier contributes in creating a condition that could have been avoided by the exercise of due care. The unavoidable accident or sudden emergency rule, which the defendant here invokes, is inapplicable in the circumstances as there was evidence, even though conflicting, to support a finding that the speed and lack of control of the bus, shortly before and at the time of the accident, concurred with the skidding of the sedan in causing the accident which resulted in plaintiff's injuries. For an illustrative case see *Schiele* v. *Motor Freight Express, Inc.,* 348 Pa. 525. We have examined all the cases cited by the defendant—the most pertinent among which are *Whalen* v. *Dunbar,* 44 R. I. 136; *Maiwald* v. *Public Service Co.,* 93 N. H. 276; *Sun Cab Co.* v. *Faulkner* 163 Md. 477—and find them clearly distinguishable on their facts from the instant case.

For the reasons stated we cannot say that the trial justice erred in finding against the defendant on the issue of liability as to the plaintiff passenger.

 The defendant next complains that the damages are excessive. To avoid confusion we have purposely refrained from adverting heretofore to the extensive and involved evidence on this point. We can only give here a mere outline of such evidence. It is clear that the plaintiff suffered painful injuries to the head, face, and chest, but apparently these responded to treatment within a few months; and that she also suffered injuries to the lower back and pelvic region, which were painful and incapaci-

tating, but the prognosis as to when she would comple⁴
recover therefrom was uncertain.

The plaintiff was taken from the scene of the acci‹
to a hospital where she remained for one week. There .
she was treated first at her home for a considerable t
and later at the respective offices of two doctors of her
choice, both of whom testified in her behalf. No m(
testimony was offered by the defendant.

There was no positive evidence of the fracture ‹
bones. The testimony of her doctors was to the
that plaintiff's condition was due to injury to the muscles
and ligaments of the lower back and pelvic region, which
incapacitated her from continuous standing. At the time
of the trial, November 1945, she was under treatment,
though infrequent, by one of these doctors for the injury
to the lower back and pelvic region, and, in his opinion,
she would require further medical attention for an indefinite
time. Without going into further detail as to plaintiff's
complaints of pain, headache, loss of sleep, and nervousness,
or the nature of the treatment that she received from time
to time, the evidence in substance shows that she returned
to work in the latter part of September 1942; that there-
after she could not work continuously until September
1944; and that up to the trial she was at times forced
to stop working because of pain in the back or headaches.

There is evidence, in accordance with the bill of particu-
lars, that plaintiff's actual expenditures were somewhat
in excess of $2700. However, proof of loss due to her in-
ability to work is tenuous. What effects, if any, she may
suffer in the future from her injuries, as testified to by
her doctors, is uncertain. When these elements of damages
are fairly considered in connection with plaintiff's right to
reasonable compensation for pain and suffering, it is clear
to us that the award of $12,000 is clearly excessive. In
our opinion the sum of $8000 will fully compensate the
plaintiff without injustice to the defendant.

The defendant's exception to the decision of the trial

justice is sustained on the ground that the damages awarded are grossly excessive. All of the defendant's other exceptions have been considered and found to be without merit and they are overruled.

The case is remitted to the superior court for a new trial on all issues, unless the plaintiff, on or before March 8, 1948, shall file in the office of the clerk of the superior court a remittitur of all damages in excess of $8000. If such remittitur is filed, the superior court is directed to enter judgment for the plaintiff on the decision as reduced by the remittitur.

*William B. Sweeney, Sherwood & Clifford,* for plaintiff, *Sidney Clifford, Raymond E. Jordan,* of Counsel.

*William E. Boyle, William J. Carlos,* for defendant.