254 A.2d 92.

ATLANTIC TUBING AND RUBBER CO. *vs.* THE CITY COUNCIL OF THE CITY OF CRANSTON *et al.*

MAY 27, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J. This petition for certiorari was brought to obtain a review of the action of the city council of the city of Cranston on September 23, 1968, denying the petitioner's application of April 30, 1968, for renewal of a permit to store vinyl chloride during the ensuing year. The writ issued, and pursuant thereto the pertinent records have been certified to this court.

It appears therefrom that petitioner, Atlantic Tubing and Rubber Co., hereinafter referred to as Atlantic, conducts a manufacturing operation on Mill Street in the city of Cranston. In the course of such operation Atlantic makes use of a substance known as polyvinyl chloride, which is manufactured and converted on its premises from a chemical known as vinyl chloride monomer. Atlantic stores vinyl chloride monomer, pending its use under pressure, as a liquid in its 30,000-gallon underground tanks.

Some years after the tanks in question had been erected and put to use, Atlantic filed an original application for a storage permit for the 30,000-gallon tanks. This application was approved by the city council on December 27, 1965, subject to the imposition of several conditions that are not pertinent to the issues here raised. Thereafter, a subsequent application for a renewal of the storage permit was filed for the year 1967, and such permit was issued by the city council on May 1, 1967, to extend over a period of one year. This latter permit did not expressly incorporate any of the conditions on its face that had been set out in the permit issued in 1965.

While the permit issued on May 1, 1967, was in effect, to wit, on April 13, 1968, an explosion occurred in a reactor on petitioner's premises. It is not disputed that after the explosion, the storage tanks in question remained intact, unaffected by the force of the explosion. However, after the explosion and presumably as a result thereof, Atlantic was notified that its permit to store vinyl chloride monomer

was not to be renewed and the material stored in the tanks would have to be removed. Nevertheless, on April 30, 1968, petitioner's application for a renewal of its permit was filed with the city council and referred to the council's committee on safety services and licenses. On July 22, 1968, that committee voted to deny the application. An appeal was taken by petitioner to the full city council, and after a public hearing, it was voted to affirm the decision of the safety services and licenses committee on the basis of an express finding "That the granting of the applicant's request will adversely affect the health, safety and welfare of the residents in the neighborhood."

The petitioner urges that respondent erred in denying its application for the renewal of its permit to store vinyl chloride on the ground that it was without jurisdiction under P. L. 1929, chap. 1455, to withhold renewal of the permit in question. Because we take the view that this issue is dispositive of the petition, we consider it unnecessary to engage in any extended discussion of other issues raised by petitioner.

It is to be emphasized as a preliminary consideration that petitioner is entitled to the beneficial use of its property and, in particular, to use the storage facilities located thereon subject to regulation by respondent in a reasonable exercise of the police power. *Tillotson* v. *City Council,* 61 R. I. 293, 200 A. 767; *MC. and S. Realty, Inc.* v. *City Council,* 86 R. I. 179, 133 A.2d 765. Further preliminary consideration should be given to the proposition that a municipality's power to regulate the use of private property within its jurisdiction is not inherent and is possessed by a municipality only as a result of a specific grant of authority from the state to exercise in part the police power of the state. *State* v. *Krzak,* 97 R. I. 156, 196 A.2d 417. We note this because, in our opinion, it is important to recognize the derivative nature of the police power of a munici-

pality and thereby to recognize that this respondent's authority to regulate the use of private property must rest upon a specific grant of power from the general assembly. It is well settled that so long as a municipality exercises this power in accordance with the limitations of the police power and in conformity with the terms of the statute granting the right to exercise some portion of the police power, its action will be sustained by this court.

The petitioner argues vigorously that P. L. 1929, chap. 1455, does not vest the city council with authority to deny its application for a renewal of its permit to store the vinyl chloride. Said chap. 1455 contains three pertinent sections. In sec. 1 authority is granted to the municipality to require a permit to "erect, alter or enlarge" any structure within its territorial limits which is to be used for the storage of "petroleum, kerosene, gasoline or coal oil" where the proposed storage capacity will be in excess of 10,000 gallons. It is not disputed in this case that vinyl chloride has a petroleum base and that the capacity of the tanks in question is in excess of 10,000 gallons. It is to be noted that sec. 1 provides further for the issuance of a permit to erect any structure which will be used for the sale of petroleum, kerosene, gasoline or coal oil. However, it appears that the parties are in agreement that this latter portion of sec. 1 of the statute has no application in the consideration of the instant case.

In sec. 2 of chap. 1455 standards are provided under which the municipality may grant or revoke a permit to erect, alter, or enlarge a structure used for the storage of a specified substance and a permit for the sale of such substance. The city council is therein authorized, in pertinent part, to "* * * impose such conditions as it may deem best to preserve the safety and physical comfort of that portion of the people residing or being about or near the location thereof, or the people generally." It is further provided

that the city council shall have authority to revoke such permit after adequate hearing "* * * if it shall find that such provisions, limitations, or conditions of the permit or any legal regulations have not been fully observed or complied with."

After oral argument respondent filed a memorandum brief in which it clearly made an election to rely solely upon the provisions of sec. 2 and sec. 3 of the statute to sustain its argument that it has authority to deny petitioner's application for the renewal of the permit. In so doing, it apparently recognizes the correctness of petitioner's position that sec. 1 of the statute authorizes action by the municipality only in situations involving the erection, alteration, or enlargement of any petroleum storage facility within the terms of the statute. The petitioner has strongly urged that the permit sought here is for the use of existing facilities for the storage of its product and is not to erect, alter, or enlarge the facilities used for such storage.

In our opinion, the statutory restriction on the grant of power to regulate therein to erection, alteration, or enlargement of the specified storage facilities discloses a legislative intent that said sec. 1 was to apply only to the regulation of the methods of construction of such facilities and was not designed to apply to the regulation of the use of existing structures. The position we thus take, in our opinion, is consistent with the theory that grants of the police power to local governments must be strictly construed. It is also in conformity with the provisions of sec. 3 of chap. 1455, which expressly grant to the municipality authority to prescribe regulations governing the use of existing facilities for the storage of such substances as vinyl chloride. Other than in peculiar circumstances, there being such an express grant of authority, we will not look to other portions of the statute to extend the grant contained in sec. 1 by implication.

It is also clear that sec. 2 of the statute is not pertinent with respect to the issue of whether the municipality erred in denying a renewal of petitioner's storage permit. Section 2 does authorize the municipality to impose conditions upon a permit so long as they bear a reasonable relationship to the "safety and physical comfort" of the people of the city. However, this authority to impose conditions is limited to situations surrounding the erection, alteration, or enlargement of the storage facilities specified in sec. 1. In our opinion, it does not include authority to require such conditions governing the use of an existing storage facility. We conclude then that since petitioner here is not seeking to erect, alter, or enlarge the facilities to be used for the storage of vinyl chloride but rather seeks to make use of existing structures for such purpose, we hold that sec. 2 vests no authority in the municipality to deny an application for renewal of the permit sought by petitioner.

In our opinion, however, an examination of sec. 3 of the statute clearly discloses that the legislature contemplated making it possible for the municipality to protect the safety of its citizens from dangers surrounding the storage of explosive or inflammable substances by granting in sec. 3 of the act a continuing authority to establish regulations by ordinance governing the use of such properties once they are erected, altered, or enlarged.

In said sec. 3 of the statute it is provided that "The city council of said city from time to time *by ordinance* may prescribe such reasonable regulations consistent herewith governing the equipment, care and manner of operation of such structures now or hereafter existing in said city as it may deem best to diminish the fire hazard, to preserve the safety and physical comfort of that portion of the people residing or being about or near the location thereof, or the people generally." (italics ours) It is our conclusion then

that the respondent city council is vested with authority pursuant to sec. 3 of the statute to promulgate reasonable regulations governing the use of storage facilities used in the instant circumstances and to revoke or refuse to renew a permit when there has been a failure to comply with such standards as are therein set forth.

However, as we have indicated heretofore, if the municipality is to engage in such regulation, it must act in strict conformity to the terms of the grant thereof. Section 3, upon examination, indicates that the municipality may provide for such reasonable regulation of structures similar to petitioner's storage facilities "by ordinance." It cannot be doubted that the requirement of the exercise of such regulatory power by the enactment of an ordinance was intended to enable both the municipality and the owner of the structures under consideration to ascertain with reasonable certainty exactly what was required concerning the equipment, care, and operation of such structures in order to secure the public safety.

Nowhere in the record does it appear, however, that the respondent city council has elected to exercise the regulatory power delegated to it in sec. 3 by the enactment of an ordinance in compliance with the requirements thereof. We are unable to escape the conclusion that pursuant to the doctrine of strict construction, such regulatory power, including the right to deny a renewal of such a permit once issued, cannot be had other than by the enactment of a pertinent ordinance. We conclude then that the respondent city council, having failed to comply with the provisions of sec. 3 by the enactment of the necessary ordinance, was without jurisdiction to refuse to renew the petitioner's application for the storage permit, and to so act constitutes reversible error.

The petition for certiorari is granted, the action of the respondent city council in denying the application for re-

newal of the petitioner's storage permit is quashed, and the records certified to this court are ordered returned to the respondent municipality.

*Jordan, Hanson & Curran, William A. Curran,* for petitioner.

*Jeremiah S. Jeremiah, Jr.,* Assistant City Solicitor, for respondent.