416 A.2d 659.

TOWN OF WEST GREENWICH *et al. vs.* STEPPING STONE ENTERPRISES, LTD. *et al.*

AUGUST 1, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

BEVILACQUA, C.J. The defendant, Stepping Stone Enterprises, Ltd. (Stepping Stone),[1] appeals from a Superior Court judgment enjoining it, *inter alia*, from holding public entertainment in West Greenwich, Rhode Island, without first obtaining a license pursuant to G.L. 1956, § §5-22-1, -2, -4 (the statute)[2] and the July 12, 1972 ordinance of the town

---

[1]Stepping Stone is a Rhode Island corporation that owns property in West Greenwich. Henry V. Davis (Davis) is the president of Stepping Stone. Both Stepping Stone and Davis are the defendants in this action. In the interest of simplicity, however, we shall refer to Stepping Stone alone as the defendant.

[2]General Laws 1956 (1976 Reenactment) §5-22-1, as amended by P.L. 1966, ch. 260, §1, reads as follows:

> "5-22-1. Town regulatory powers. — The town councils and city councils may license, regulate and in those certain cases specifically set forth in §5-22-5 may prohibit and suppress theatrical performances, rope and wire dancing and all other shows and performances in their respective towns, conforming to law."

General Laws 1956 (1976 Reenactment) §5-22-2, as amended by P.L. 1938, ch. 333, §17, reads:

> "5-22-2. Town license for exhibitions. — They may grant a license, for a term not exceeding one (1) year, under such restrictions and regulations as they shall think proper, to the owner of any house, room or hall in the town, for the purpose of permitting exhibitions therein, which license shall be revocable at the pleasure of said town council."

General Laws 1956 (1976 Reenactment) §5-22-4, as amended by P.L. 1938, ch. 362, §1, reads:

> "5-22-4. Town license required. — No person shall publicly or for pay or for any profit or advantage to himself, exhibit or promote or take part in any theatrical performance, or rope or wire dancing or other show or performance, or conduct, engage in or promote any wrestling, boxing or sparring match or exhibition, nor shall any person for any pecuniary profit or advantage to himself, promote any public roller skating in rinks or halls, or give any dance or ball, without a license from the town council of the

of West Greenwich (the ordinance).[3]

Stepping Stone had attempted to obtain licenses for concerts scheduled to be held on July 18, 24, 25, 26 and 27, 1975; and August 2 and 9, 1975. These applications were unanimously denied by the West Greenwich Town Council (the town council) on July 9, 1975. This denial followed extensive testimony concerning the Blue Grass Festival, which was sponsored previously by Stepping Stone over the July 4, 1975 weekend. During this concert, nearby residents suffered constant personal abuse, threats, noise, extreme physical exhaustion, invasion of and damage to their property (including thievery and fires), traffic tie-ups and general filth. These problems were compounded by the lack of police staff and equipment. Because Stepping Stone had failed to prove that it could provide adequate health and safety facilities to safeguard against repetition of these incidents, the town council refused to issue the requested licenses.

------

town in which such performance, show, exhibition, dance or ball is sought to be given."

[3] The July 12, 1972 West Greenwich ordinance requiring applicants to obtain a license before holding public entertainment reads in pertinent part as follows:

"Be it ordained by the Town Council of the Town of West Greenwich, as follows:

"Section 1. Application:

No person shall hold any public entertainment within the Town of West Greenwich without first filing a written application for a license to do so with the Town Council of said Town. Said application shall be filed not later than seven days prior to the next regular meeting of said Town Council, provided, however, that said Town Council may waive this requirement on good cause shown by the applicant.

"Section 2. Compliance With Other Laws:

No license shall issue by said Town Council until the applicant or applicants shall affirmatively show that the proposed entertainment, if allowed, or the premises to be used therefor, if allowed, shall otherwise comply with all applicable Federal, State and local laws relative to the health, safety and welfare of the public, including, but not limited to: Traffic, zoning, parking, fire protection, and the like."

As a result of its inability to obtain the license permits, Stepping Stone filed a complaint in Federal District Court for the District of Rhode Island. The complaint stated that Stepping Stone intended to exercise its federal constitutional rights to freedom of speech and expression and its right under 42 U.S.C. §1983 to engage in a lawful occupation by providing musical entertainment without the necessary license permits. In that regard, Stepping Stone requested the Federal District Court to enjoin the town council and the acting Chief of Police from criminally prosecuting it for violating the statute and the ordinance. The district court declined to provide injunctive relief.

Stepping Stone had additionally asked the district court to convene a three-judge court to declare unconstitutional the statutory prohibition against performing or promoting musical concerts in Rhode Island without a license and the town ordinance pursuant to which the members of the town council had arbitrarily denied issuance of these permits. The district court denied the request to convene the three-judge court under the rule that a three-judge court need not be convened if no substantial constitutional question is raised. *See Stepping Stone Enterprises, Ltd.* v. *Andrews,* Civ. No. 75-0218 (D. R.I., filed October 16, 1975); *Goosby* v. *Osser,* 409 U.S. 512, 518, 93 S.Ct. 854, 858, 35 L.Ed.2d 36, 42 (1973). The Court of Appeals for the First Circuit affirmed the district court's decision. *See Stepping Stone Enterprises, Ltd.* v. *Andrews,* 531 F.2d 1, 3 (1st Cir. 1976).

Because Stepping Stone had stated that it would proceed to hold live entertainment on its property notwithstanding the denial of the license permits, the town of West Greenwich (the town) and Theodore Briggs, a resident, filed the instant complaint in the Superior Court for Kent County on July 16, 1975, seeking both temporary relief and preliminary and permanent injunctions prohibiting Stepping Stone from holding public entertainment on those dates for which licenses had been previously denied by the town council. A temporary restraining order was granted that same day. On August 12, 1975, an order was entered in the Superior Court

granting the town's motion to consolidate the preliminary hearing with the hearing on the merits. Later, Stepping Stone filed a third-party claim in the Superior Court against Robert J. Andrews, acting Chief of Police of West Greenwich, and the individual members of the town council and requested *inter alia* that the third-party defendants be enjoined from criminally prosecuting Stepping Stone for proceeding without a license permit and that the court declare unconstitutional the statutory power of the town council to deny arbitrarily the issuance of the license permits absent the legality of the performance.

After a nonjury trial, the lower court granted the town and Theodore Briggs permanent injunctive relief, noting that Stepping Stone had reiterated in open court its intention to provide musical entertainment without the required license permits. The trial court observed that the ordinance requiring a license for the showing of live entertainment is premised upon federal, state and local laws that regulate the health, safety and welfare of the public. Grounding its decision on evidence elicited at the town meeting that sanitation, traffic control, zoning, parking and fire protection had been undermined at the Blue Grass Festival and possibly would otherwise be jeopardized at future concerts, the trial court granted injunctive relief to safeguard the community from what it considered to be the immediate and irreparable harm that would ensue if Stepping Stone were not enjoined from fulfilling its threat to proceed with the concerts without first obtaining the license permits.

Stepping Stone now appears before this court arguing (1) that the statute and the ordinance violate its first-amendment rights to free speech and expression as applied to the states via the fourteenth amendment, (2) that the town of West Greenwich lacks standing to enjoin or prohibit an alleged nuisance, (3) that a court of equity lacks the power to enjoin a violation of the criminal law, and (4) that a private party may not obtain a Superior Court injunction to abate a nuisance absent evidence of irreparable harm.

## I

We need not address Stepping Stone's first contention because it has been answered by the First Circuit Court of Appeals in *Stepping Stone Enterprises, Ltd.* v. *Andrews, supra.* Both the parties and the issue before the federal court are substantially similar to those presently before us. Moreover, the facts of both cases are identical. Before the first circuit court, Stepping Stone alleged that the statute and ordinance unconstitutionally violate its rights to free speech and expression. The First Circuit Court of Appeals held that the attack on the statute and ordinance was insubstantial in light of the United States Supreme Court precedent upholding the power of states and towns to delineate standards for the protection of the health and safety of their citizens. We agree with the analysis of the first circuit court and refer Stepping Stone to that decision.

## II

Stepping Stone next alleges that a municipal corporation has no standing to enjoin or prohibit activities constituting a nuisance. Pursuant to legislative grant,[4] the General

---

[4]General Laws 1956 (1970 Reenactment) §45-6-1, which delegates police power to municipalities, reads as follows:

"Scope of ordinances permissible. — Town councils and city councils may from time to time make and ordain all ordinances and regulations for their respective towns, not repugnant to law, which they may deem necessary for the safety of their inhabitants from fire, firearms and fireworks; to prevent persons standing on any footwalk, sidewalk, doorstep, or in any doorway, or riding, driving, fastening or leaving any horse or other animal or any carriage, team or other vehicle on any such footwalk, sidewalk, doorstep or doorway within such town, to the obstruction, hindrance, delay, disturbance or annoyance of passers-by or of persons residing or doing business in the vicinity thereof; to regulate the putting up and maintenance of telegraph and other wires and the appurtenances thereof; to prevent the indecent exposure of any one bathing in any of the waters within their respective towns; against breakers of the Sabbath; against habitual drunkenness; to regulate the speed of driving horses and cattle over bridges; respecting the purchase and sale of merchandise or commodities within their respective towns and cities; to protect burying grounds and the graves therein from trespassers; and, generally, all other ordinances, regulations and bylaws for the well ordering, managing and directing of the prudential affairs and police of their respective towns, not repugnant to the Constitution and laws of this state, or of the United States."

Assembly has given town and city councils the police power to promulgate regulations and ordinances to protect the safety of their inhabitants. *J.M. Mills, Inc.* v. *Murphy*, 116 R.I. 54, 66, 352 A.2d 661, 667 (1976); *Atlantic Tubing & Rubber Co.* v. *City Council*, 105 R.I. 584, 587, 254 A.2d 92, 94 (1969); *see Palombo* v. *Housing Board of Review*, 92 R.I. 421, 424, 169 A.2d 613, 615 (1961). The power of a municipality to enforce its ordinances and regulations is also of statutory derivation. *See State* v. *Krzak*, 97 R.I. 156, 160, 196 A.2d 417, 420 (1964). In G.L. 1956 (1970 Reenactment) §45-6-2,[5] as amended by P.L. 1971, ch. 224, §1, the General Assembly gave municipalities the power to impose penalties for the violation of its ordinances and regulations. Although the power to enjoin a violation of an ordinance is not specifically enumerated in §45-6-2, we hold that when the violation of an ordinance also constitutes a nuisance, a municipality may seek an injunction in equity. We thus subscribe to the view stated by the court in *Harvey* v. *Prall*, 250 Iowa 1111, 97 N.W.2d 306 (1959), which upheld the power of municipalities to enjoin nuisances:

> "Where the violation of an ordinance constitutes a nuisance and equitable grounds exist equity may grant relief therefrom, not because the act is a violation of the ordinance, but because it is a nuisance." *Id.* at 1119-20, 97 N.W.2d at 311.

---

[5]General Laws 1956 (1970 Reenactment) §45-6-2, as amended by P.L. 1971, ch. 224, §1, reads as follows:

"Imposition of penalities for ordinance violations. — They may impose penalties for the violation of such ordinances and regulations, not exceeding in amount one hundred dollars ($100) or imprisonment not exceeding thirty (30) days in some jail or house of correction, for any one (1) offense, unless other penalties therefor, or penalties within other limits, are specially prescribed by statute, to be prosecuted by some officer appointed for that purpose, and to be recovered to the use of the town, or of such person or persons, and in such proportions, as [they] in their said ordinances and regulations shall designate."

*See also Village of Riverwoods* v. *Untermyer,* 54 Ill. App. 3d 816, 822, 369 N.E.2d 1385, 1390 (1977); *City of Saginaw* v. *Budd,* 381 Mich. 173, 178, 160 N.W.2d 906, 908 (1968); *Zylka* v. *City of Crystal,* 283 Minn. 192, 194-95, 167 N.W. 2d 45, 48 (1969); *Village of Wind Point* v. *Halverson,* 38 Wis. 2d 1, 11, 155 N.W.2d 654, 659 (1968). Without the right to enjoin a nuisance, the police power of a municipality to protect the health, safety and welfare of its inhabitants would be merely illusory.

## III

Stepping Stone's third argument is that courts of equity have no power to enjoin a violation of the criminal law because a fine or imprisonment imposed for violation of that law is an adequate remedy. It is well established that equity courts lack criminal jurisdiction and that equity will not enjoin acts merely because they are punishable as crimes. *Berberian* v. *Avery,* 99 R.I. 77, 83, 205 A.2d 579, 582 (1964). Nevertheless, because the same act may violate both the criminal law and an equitable obligation toward another, this court has enunciated an exception to this general rule. In such situations a party may seek an injunction against criminal activity if independent grounds exist that justify equitable relief. *See Rhode Island Bar Association* v. *Automobile Service Association,* 55 R.I. 122, 128, 179 A. 139, 141 (1935). The facts of this case fall within this exception. If Stepping Stone were to hold the proposed concerts without first obtaining the necessary license to do so—which would entail an affirmative showing of compliance with health and safety laws—then Stepping Stone would violate both the criminal law and its equitable obligation of ensuring the welfare of the townspeople of West Greenwich and of those attending the concert.

The trial court thus grounded its grant of an injunction on the claim that, absent injunctive relief, there would be immediate and irreparable harm to the health and safety of the townspeople and the concert participants. This court has long recognized the threat of immediate and irreparable

harm as a valid ground for such equitable relief. *See, e.g., Menard* v. *Woonsocket Teachers' Guild-AFT 951*, 117 R.I. 121, 126-27, 363 A.2d 1349, 1353 (1976); *Lewis* v. *Town of North Kingstown*, 16 R.I. 15, 17, 11 A. 173, 173 (1887). The Superior Court therefore had the power to grant equitable relief in the form of an injunction.

## IV

Stepping Stone's last contention is that Theodore Briggs, a complainant in the present action, presented no competent evidence that he would suffer immediate and irreparable harm in the absence of injunctive relief. Absent a showing of abuse of discretion, we will not consider the propriety of granting injunctive relief, which is a matter better left to the discretion of the trial justice. *Gilbane Building Co.* v. *Cianci*, 117 R.I. 317, 320, 366 A.2d 154, 156 (1976). However, whereas the trial justice is usually in a better position to evaluate the evidence introduced at trial, in this case the parties agreed before the Superior Court that the trial justice could read the transcript of the hearing before the town council to avoid the necessity of introducing duplicate testimony at trial. The trial justice therefore reviewed the cold testimony given before the town council concerning the prior Stepping Stone Blue Grass Festival. This court, which has the same cold record before it, can evaluate the testimony in the same manner as the trial justice. *See Gillogly* v. *New England Transportation Co.*, 73 R.I. 456, 462, 57 A.2d 411, 414 (1948). This testimony included the statement of Theodore Briggs before the town council that during the Blue Grass Festival of July 4, 1975, he spent three nights without sleep, he suffered both fire and vandalism on his land, trash was thrown upon his land and some of his trees were chopped down. Because we find that the testimony of Mr. Briggs at the town council meeting of July 9, 1975 sufficiently demonstrates the need for injunctive relief in this case, we hold that the trial justice was acting well within his discretionary limits in issuing the injunction.

Stepping Stone's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remitted to the Superior Court.

*V. James Santaniello,* for plaintiffs.

*Aram K. Berberian,* for defendants.