STATE

v.

Anthony BENEVIDES.

No. 78–186–C.A.

Supreme Court of Rhode Island.

Sept. 30, 1980.

Dennis J. Roberts, II, Atty. Gen., John E. Migliaccio, Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, William J. Conley, Jr., Asst. Public Defender, Providence, for defendant.

## OPINION

MURRAY, Justice.

On May 18, 1976, the defendant, Anthony Benevides (Benevides), after pleading nolo contendere to an indictment charging him with assault upon a uniformed police officer,[1] received a one–year suspended sentence and was placed on probation for two years. On September 13, 1977, the state presented Benevides to the Superior Court as a violator of his probationary status, and after a hearing, he was adjudged to be in violation of the terms of his probation; a judgment was entered in which his suspension was removed and he was ordered to serve the term of one year previously im-

---

1. In violation of G.L.1956 (1969 Reenactment) § 11–5–5, which has since been amended by P.L.1979, ch. 249, § 1.

posed. The defendant now appeals, claiming that the trial justice erred in making certain procedural and evidentiary rulings during the course of the hearing.

The basis of the state's motion to adjudge Benevides a violator was his arrest by the Cranston police on charges of burglary and possession of stolen goods, arising out of his alleged participation in a housebreak at 24 Mathewson Street in that city on June 25, 1977.. The pertinent portions of the testimony introduced at the hearing can be briefly summarized as follows.

The state's chief witness against Benevides was Lance St. Pierre (St. Pierre), an admitted participant in the burglary. St. Pierre recounted that on the night of June 25 he, Benevides and John J. Silvia (Silvia),[2] were riding in his car in the city of Cranston. The discussion in the car that evening centered on a possible target for a burglary. After riding around for a couple of hours, the three eventually decided on the Mathewson Street property. After ascertaining that no one was home, one of the three gained entrance to the apartment by climbing through a window and then let the others in through the front door. Once inside they gathered all the valuable contents of the apartment in the front room and carried them out to St. Pierre's car.

The number of articles taken required the trio to make three trips from the apartment to Benevides's house, which was approximately two to three miles away; the last trip ended at approximately 1:30 a. m. St. Pierre said that plans were made for the three to meet again at Benevides's house the following day to discuss where the stolen items could be sold. He testified, however, that he did not go to Benevides's house the following day as had been arranged.

The following evening the Cranston police arrested St. Pierre while he was in the process of burglarizing another home in that city. The police also arrested St.

Pierre's girlfriend, Janis Czerwien (Czerwien), who had been waiting in his car outside the home. After his arrest St. Pierre decided to cooperate with the police and told them of his involvement with Benevides and Silvia in the burglary the previous evening.

The state rested following St. Pierre's testimony. The defendants then presented two witnesses. Diane M. Abato (Abato), Silvia's girl friend, testified that she had spent the evening of June 25 at the Benevides's house, playing card games with Benevides, his wife, and Silvia and that neither Benevides or Silvia left the house that evening. Abato recalled that the following morning St. Pierre arrived at Benevides's house at approximately 8:45 a. m. with his car loaded with household goods. She overheard St. Pierre tell Benevides that he had had a fight with his girl friend and wanted to keep his belongings at Benevides's house for a day or two. She testified that Benevides and Silvia then helped St. Pierre carry the articles into the house.

Frederick W. Lake (Lake), a next–door neighbor of Benevides, also testified on behalf of defendants. His testimony was corroborative of Abato's testimony that placed St. Pierre at Benevides's house on the morning of June 26. Lake testified that he observed St. Pierre arrive at Benevides's house between 8:30 and 9 a. m. with his car filled with various household goods. St. Pierre went into the house; a few moments later he returned with Benevides and Silvia, and all three began to carry the articles inside.

At the conclusion of Lake's testimony, the defense rested. In rebuttal the state called Janis Czerwien who testified that St. Pierre had arrived home sometime between 1:30 and 2 a. m. on June 26. She said that he remained at home and was in bed at the time the defense witnesses claimed he was at Benevides's house later that morning. The state also sought to introduce testimo-

---

**2.** The state had moved also to have John J. Silvia adjudged to be a violator of the terms of his probation. Consequently, a joint violation hearing was conducted in the Superior Court.

However, a disposition was reached in Silvia's case prior to the decision in this matter and is not before us at this time.

ny by Czerwien that several weeks after his arrest for his alleged participation in the burglary, Benevides had threatened to kill her if St. Pierre testified against him at the violation hearing. The defendant objected to the introduction of this testimony as being outside the scope of rebuttal. The trial justice sustained the objection, but the testimony was admitted when, over the defendant's objection, he granted the state's motion to reopen its case:

"Although the testimony sought to be adduced by the [s]tate is not directly on point, and apparently it does not involve a direct admission of complicity in this affair, it does, however, directly tend to show a guilty state of mind on the part of Mr. Benevides. In this context I am satisfied that it's an important part of the [s]tate's case in this violation hearing and I'm satisfied the interest of justice requires that the [s]tate be allowed to present this information to the court."

The defendant cross-examined Czerwien on several aspects of her testimony, but the trial justice refused to allow defendant to question her concerning her involvement with St. Pierre in the June 26 burglary

The record indicates that after the state rested, defendant requested that the trial justice grant a continuance in light of Czerwien's testimony concerning her alleged confrontation with Benevides. Although the trial justice agreed to recess the hearing until the following morning, because of scheduling difficulties of the court and the attorneys, the hearing was continued for almost four months. When the hearing resumed, defendant attempted to rebut Czerwien's testimony by testifying to a totally different account of the confrontation.

At the conclusion of the testimony the trial justice found that the state had introduced far more than enough evidence to reasonably satisfy him that defendant had violated the terms of his probation, and accordingly, the trial justice granted the state's motion to adjudge defendant a violator.

The defendant's first contention on appeal is that the trial justice abused his discretion when he allowed the state to reopen its case after defendant had rested. He claims that the trial justice abused his discretion by not requiring the state to explain its failure to present Czerwien's testimony during its case and by failing to consider the prejudice the reopening would cause defendant.

■ As we have noted on previous occasions, the regulation of the order of proof at trial rests within the sound discretion of the trial justice. In his discretion he may admit competent evidence at any stage of the trial. *State v. LaPlume*, 118 R.I. 670, 681, 375 A.2d 938, 943 (1977); *State v. Mattatall*, 114 R.I. 568, 571, 337 A.2d 229, 232 (1975); *State v. Falcone*, 41 R.I. 399, 402, 103 A. 961, 962 (1918). Thus, a motion to reopen a case to introduce additional evidence is addressed to the discretion of the trial justice and a decision made in the exercise of such discretionary power will not be disturbed by this court on appeal absent a showing of an abuse of that discretion. *Marshall v. Tomaselli*, 118 R.I. 190, 198–99, 372 A.2d 1280, 1285 (1977); *Vigneau v. LaSalle*, 111 R.I. 179, 182, 300 A.2d 477, 479 (1973); *State v. Shea*, 77 R.I. 373, 377, 75 A.2d 294, 296 (1950). We have said that we will not find such an abuse of discretion unless it is affirmatively shown that the party offering the evidence was guilty of trickery or that substantial prejudice resulted from the order of proof. *State v. Mattatall*, 114 R.I. at 571, 337 A.2d at 232; *Gillogly v. New England Transp. Co.*, 73 R.I. 456, 463, 57 A.2d 411, 414 (1948).

■ Benevides in his brief concedes that there is no evidence in the record to indicate that the state's motion to reopen was an attempt at trickery. The defendant does, however, make several assertions that he was substantially prejudiced by the state's reopening of its case. He claims that his attorney had been advised by a member of the Attorney General's department that the charges against him arising out of the incident with Czerwien would not serve as grounds for the violation hearing. Thus, Benevides asserts that he was sur-

prised by the introduction of Czerwien's testimony, which forced him to respond to new evidence after he had rested. The defendant argues that his defense strategy might have been different if Czerwien had testified in the state's case–in–chief. Benevides contends that the resulting prejudice is also shown by the fact that the trial justice relied heavily on Czerwien's testimony in finding him to be a violator.

We are unable, however, to agree with defendant's assertion that he was substantially prejudiced by the state's reopening of its case. The record indicates that following Czerwien's direct examination, defendant conducted a lengthy and full cross–examination. In addition, the period of almost four months between that cross–examination and the time the hearing resumed was more than sufficient time for Benevides to produce witnesses to rebut Czerwien's testimony relating to the threats he allegedly made against her. It is clear in this case, however, that the trial justice chose not to believe Benevides's account of the incident.

In our view, the testimony introduced by the state when it reopened its case may have, in fact, been detrimental to defendant's case; however, Benevides has failed to demonstrate to us that he was in any way substantially prejudiced by the order in which this testimony was introduced at the hearing. Absent such a showing of substantial prejudice, we cannot say that the trial justice abused his discretion in this regard.

This brings us to defendant's final contention, as we understand it, that he was denied his right under the Federal and State Constitutions to confront witnesses against him when the trial justice precluded him from cross–examining Czerwien concerning the modus operandi of St. Pierre in the June 26 burglary. Benevides asserts that the trial justice should have allowed him to pursue this line of inquiry to show that Czerwien, not he and Silvia, was with St. Pierre when he committed the burglary on June 25.

■ Although defendant correctly states the proposition that an accused has a constitutional right to confront and cross–examine witnesses against him in a criminal proceeding, we find it difficult to perceive how that right was infringed upon the trial justice's limitation of cross–examination in this instance.

■ In this jurisdiction cross–examination of a witness is generally limited in scope to matters testified to on direct examination. *Halpert v. Rosenthal*, 107 R.I. 406, 421, 267 A.2d 730, 738 (1970); *State v. Campbell*, 95 R.I. 370, 376, 187 A.2d 543, 547 (1963). Also permitted on cross–examination are questions designed to explain, contradict, or discredit any testimony given by a witness on direct examination, or to test his accuracy, memory, veracity, or credibility. *State v. Ragonesi*, 112 R.I. 340, 346, 309 A.2d 851, 854 (1973); *Atlantic Refining Co. v. Director of Public Works*, 102 R.I. 696, 713, 233 A.2d 423, 432 (1967). However, the permissible scope and extent of cross–examination rests in the sound discretion of the trial justice, *State v. Bennett*, R.I., 405 A.2d 1181, 1183 (1979); *State v. Eckhart*, 117 R.I. 431, 435–36, 367 A.2d 1073, 1075–76 (1977); *State v. Kieon*, 93 R.I. 290, 297, 175 A.2d 284, 288 (1961) and his rulings thereon will only be reviewed for an abuse of discretion. *State v. Mattatall*, 114 R.I. at 572, 337 A.2d at 232.

■ We see no merit in defendant's argument that the trial justice's refusal to allow him to cross–examine Czerwien on St. Pierre's modus operandi in the June 26 burglary was a denial of his constitutional right to confront adverse witnesses against him. The trial justice, in our opinion, gave wide latitude to defendant, allowing him to conduct a full cross–examination of the matters she had testified to.

Czerwien's involvement in the June 26, burglary was not brought out during her direct examination. Since Czerwien had not been convicted on any charges arising out of that burglary, it was not a matter that could have been properly used to impeach her credibility. When viewing the situation in this light, we see no abuse of

the trial justice's discretion in so limiting Benevides's cross-examination.

The defendant's appeal is denied and dismissed, the judgment of conviction appealed from is affirmed, and the case is remanded to the Superior Court.