**In re JOSEPH J.**

**No. 81–549–Appeal.**

Supreme Court of Rhode Island.

Aug. 23, 1983.

William G. Savastano, Soucy & Theriault Inc., North Smithfield, for petitioner.

John E. Farley, Chief Legal Counsel, Dept. for Children and Their Families, Providence, for respondent.

## OPINION

SHEA, Justice.

Joseph's foster parents brought this action in the Family Court seeking injunctive relief. They sought to prevent the Department of Children and Their Families (DCF) from reuniting Joseph with his natural mother until there could be a hearing on their petition for adoption. The Family

Court determined that the foster parents lacked standing and denied them relief. We affirm.

Joseph was born on November 1, 1978. At the time, his mother was addicted to drugs. She allegedly suffered from an overdose the day before his birth. Joseph showed signs of the effects of drug abuse by his mother when he was born. As a result, the predecessor agency of DCF petitioned the Family Court to commit Joseph to its care and custody. On November 27, 1978, the agency placed Joseph in the foster home, where he remained until August of 1981. In June of 1981, DCF recommended that Joseph and his natural mother be reunited. The agency's recommendation was based upon the mother's progress in her drug-treatment program and her success in finding employment. Pursuant to the reunification plan with DCF, she had saved money to be used in obtaining independent living arrangements and demonstrated good parenting skills with Joseph.

Apparently, upon learning of the reunification plan, the foster parents filed a petition for adoption. They also sought to enjoin DCF from reuniting Joseph and his mother pending hearing on their adoption petition. The Family Court denied injunctive relief and ordered that the plan for reunification be effectuated at the end of August 1981. The record does not indicate whether or not a hearing has ever been held on the adoption petition. On appeal, the foster parents claim that the Family Court justice abused his discretion by denying them injunctive relief pending a hearing on their adoption petition.

This case reaches us in a peculiar procedural posture. Ordinarily, the interlocutory nature of the action below, without more, would prevent us from considering this appeal. We do, however, grant review when the case falls within previously enunciated exceptions to this rule, such as the legislatively created exception that allows a party to appeal the granting of injunctive relief. See G.L.1956 (1981 Reenactment) § 14–1–52, as amended by P.L.1981, ch. 329

§ 1 and G.L.1956 (1969 Reenactment) § 9–24–7. Another exception, judicial in origin, permits a review of a decree which, although in a strict sense interlocutory, has such an element of finality that we will act before the case has finally terminated in order to prevent possible injurious consequences. *Redfern v. Church of the Mediator,* 101 R.I. 182, 185, 221 A.2d 453, 455 (1966). Review in the latter situation, however, is by way of discretionary writ of certiorari. *See Mutual Clerks' Guild of Rhode Island v. Pari Mutual Employees Union of Building Service International Union,* 84 R.I. 258, 123 A.2d 255 (1956).

Neither party provides us with any assistance in addressing the precise issue before us. Because the Family Court denied the requested relief, the case clearly does not fall within the exception created in §§ 14–1–52 and 9–24–7. Also, because the foster parents filed an appeal, they should not be allowed to proceed under the judicially created exception. The action of the court below, however, does have an element of finality because the denial of the temporary relief permitted the reunification to progress unimpeded and foreclosed the foster parents' hopes for adoption. We shall therefore depart from our usual procedure and consider the appeal as a petition for certiorari in order to address the merits of the case.

The purpose of a restraining order or preliminary injunction is to preserve the status quo pending a hearing on the merits of a case. Before granting such temporary relief, the court must make a finding not only that the status quo must be preserved to prevent irreparable injury but also that petitioner has a reasonable probability of success on the merits. *See Town of West Greenwich v. Stepping Stone Enterprises, Ltd.,* R.I., 416 A.2d 659 (1979); *Gilbane Building Co. v. Cianci,* 117 R.I. 317, 366 A.2d 154 (1976). Our consideration is limited to a determination of whether or not the trial justice abused his discretion. *Griggs and Browne Co., Inc. v. Healy,* R.I., 453 A.2d 761, 762 (1982).

Foster parents provide temporary care for a child in a foster home when the child's own family cannot adequately provide the child with social, emotional, and physical care. See G.L.1956 (1977 Reenactment) § 42–72–2(2)(b), as enacted by P.L.1979, ch. 248, § 1. Ideally, the foster family, for a period of time, provides the child with the care and protection of a family environment while DCF helps the natural parents make the necessary changes and adjustments that will permit the child to be returned to them. See § 42–72–2. Foster parents are licensed by the state and are required to keep accurate records of the children for whom they care. General Laws 1956 (1977 Reenactment) § 40–13–3 as amended by P.L.1982, ch. 271, § 1 and § 40–13–8. In addition, their homes are subject to semiannual inspection. Section 40–13–5 as amended by P.L.1979, ch. 184, § 1. Foster parents are required by DCF to sign a boarding-home agreement, which contains rules that the foster parents must observe. They agree to accept responsibility for the daily care of the child, to cooperate with the agency, and to relinquish all rights and claims to the child, serving in the child's best interest.

■ In this case, the trial justice denied injunctive relief, holding that the foster parents lacked standing. It is not clear from his decision whether he meant standing to petition for an injunction or standing to petition for adoption. Whatever his reason, it is well established that this court will affirm a correct determination of a lower court even though it does not accept the court's reasoning. Costa v. Gagnon, R.I., 455 A.2d 310, 313 (1983); State v. Ibbison, R.I., 448 A.2d 728, 733 (1982). In the case at bar, the trial justice correctly denied the injunctive relief.

■ Foster parents do not have standing to adopt unless there has been a finding by DCF that such adoption is in the best interest of the child. Section 40–12–15. The department did not make such a finding in this case. In fact, it determined that it was in Joseph's best interest to be reunited with his natural mother. Since the foster parents had no chance of success on the merits, a temporary restraining order or preliminary injunction was not warranted. The trial justice could not have abused his discretion in denying the injunctive relief.

■ The foster parents' contention that G.L.1956 (1981 Reenactment) § 15–7–7 provides them with standing to adopt is also without merit. That section provides that adoption should be permitted only if the integration of the child into the home of the natural parents is improbable in the foreseeable future. In this case, reunification was not improbable, but was, in fact, imminent and did actually occur.

The foster parents also cite Smith v. Organization of Foster Families for Equality and Reform, 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977), as authority for their standing to petition for adoption. Smith did not concern adoption by foster parents. It examined the foster parents' liberty interest in continuing the foster parent-child relationship. A group of foster parents challenged the New York statute governing the removal of children from foster homes. The Court began its analysis by stating that "the limited recognition accorded to the foster family by the New York statutes and the contracts executed by the foster parents argue against any but the most limited constitutional 'liberty' in the foster family." Id. at 846, 97 S.Ct. at 2110, 53 L.Ed.2d at 36. The Court, however, said it was difficult to reconcile the tenuous liberty interest of foster parents when they compete with the rights of natural parents in their children. Consequently, the Court concluded that any possible liberty interest of foster parents "must be substantially attenuated" when balanced with the rights of biological parents to have the child returned to them.

In the case at bar, we have such a situation. We believe that Smith does not provide these foster parents with an independent basis for standing to petition for adoption. Clearly the natural mother has superior interest in the return of her child.

For the reasons stated, the appeal of the foster parents is denied and dismissed; the order of the Family Court is affirmed, and the papers in the case may be returned to the Family Court for proceedings consistent with this opinion.