Lucia **VERTE**

v.

**MEARTHANE PRODUCTS CORP.**

No. 89-437-M.P.

Supreme Court of Rhode Island.

Dec. 7, 1990.

Lauren Jones, Robert Smith Thurston, Jones Associates, Providence, Anthony J. Cordeiro, Carrillo & Cordeiro, Warwick, for plaintiff.

Howard L. Feldman, Chisholm and Feldman, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case is before the court on the petition for certiorari of Mearthane Products Corporation to review a final decree of the Workers' Compensation Commission Appellate Commission (Appellate Commission). The Appellate Commission reversed the finding of the trial commissioner and awarded the plaintiff, Lucia Verte, disability benefits for kidney disease, crescentic glomerulonephritis, that it determined arose out of and in the course of her employment. We sustain the finding of the Appellate Commission and deny the petition for certiorari. The facts are essentially undisputed and are as follows.

Lucia Verte (Verte) began working as a machine-parts cleaner at Mearthane Products Corporation (employer) in 1974. She typically worked ten to twelve hours per day, five to six days per week. Verte's job required cleaning metal typewriter and computer parts with a cloth and a chemical cleaning solvent. This task was accomplished by wrapping the cloth around her finger, dipping her finger into a small can containing the chemical methylene chloride, and then rubbing the cloth over the surface of metal machine parts to remove built-up residue. A similar method was used to clean plastic machine parts, except the cleaning solvent in that instance was alcohol.

On September 19, 1984, Verte was admitted into Kent County Hospital where she was treated for swelling in her chest and neck area and also for congestion. Verte was diagnosed as suffering from acute kidney failure. She remained at Kent County Hospital for approximately one month before being transferred to the New England Medical Center in Boston where she underwent treatment for another one-month period.

Verte's attending physician at Kent County Hospital was Dr. Owen B. Gilman, a board certified specialist in internal medicine and nephrology. Doctor Gilman testified via deposition that he diagnosed Verte as suffering from irreversible kidney disease and thereafter recommended a biopsy. The biopsy was performed at the New England Medical Center, and Verte's condition was identified as crescentic glomerulone-

phritis.[1] Doctor Gilman thereafter determined that Verte was totally disabled and prescribed ongoing dialysis treatment, which she is presently receiving in three three-hour sessions per week.

The evidence presented at the hearing before the trial commissioner consisted of Verte's testimony, the deposition of her supervisor, Olga Pesaturo, and three items of medical evidence: (1) the deposition of Verte's present treating physician, Dr. Owen Gilman; (2) the affidavit and report of Dr. Frank Racioppi, who treated Verte during her two pregnancies; and (3) the deposition of employer's expert, Dr. David Yoburn.

Verte's work supervisor, Olga Pesaturo, confirmed the job description given by Verte at the hearing. Pesaturo's testimony revealed that during the first nine years of her employment, Verte used methylene chloride as a cleaning agent for approximately 50 percent of each work day. Pesaturo also testified that for most of 1984, Verte used "some methylene" for cleaning but that she used "mostly alcohol" because the typewriter parts that she was required to clean were plastic.

Verte's treating physician, Dr. Gilman, testified that methylene chloride is a type of hydrocarbon that is absorbed by the human body both by inhalation and by skin contact and that this type of systemic absorption can lead to kidney damage. Further, Dr. Gilman stated that hydrocarbon is a well-known etiologic agent in causing rapidly progressive or crescentic glomerulonephritis. Accordingly, Dr. Gilman was of the opinion that although the onset of crescentic glomerulonephritis can be related to various definable and indefinable causes, he believed that employee's crescentic glomerulonephritis had its onset in 1984 and that to a reasonable degree of medical certainty the methylene chloride with which she worked was the etiologic agent that caused her kidney failure.

Doctor Gilman also testified that although he did not have Verte's medical records prior to 1984, he did inquire into her medical history, which revealed that in March 1984, Verte had an episode of hematuria (blood in the urine). Doctor Gilman stated that he was of the opinion that any prior history of hematuria or diminished urinary output was without significance in regard to his determination that Verte's 1984 kidney failure was a result of her occupational exposure to methylene chloride. Doctor Gilman based his opinion on the theory that pathologic examination suggested Verte's crescentic glomerulonephritis to be of "relatively recent" origin.

The employer presented the deposition testimony and report of Dr. David Yoburn, a board-certified specialist in nephrology who had conducted a physical examination of Verte. Doctor Yoburn reviewed the medical records regarding Verte that were furnished by Dr. Frank Racioppi, the Kent County Medical Center, and the New England Medical Center. Doctor Yoburn also reviewed the deposition testimony of Olga Pesaturo, as well as the deposition testimony and medical records supplied by Dr. Gilman. Doctor Yoburn testified in his deposition that in his medical opinion, a review of Verte's medical records indicated that she may have had crescentic glomerulonephritis as far back as 1977 and that this condition was somehow exacerbated in 1984. Doctor Yoburn based his opinion on the results of urinalysis tests that showed traces of blood in the urine and abnormal traces of protein as early as 1977. However, Dr. Yoburn also conceded that Verte's abnormal urinalysis results in 1977 could have been related to her pregnancy at the time rather than kidney disease. Doctor Yoburn further testified that the finding of blood and protein in the urine, although often indicative of kidney disease, may also be associated with urinary-tract infections. Further, Dr. Yoburn acknowledged that a test used to diagnose structur-

1. Doctor Yoburn defines "crescentic" as abnormal tissue findings that are shaped in a crescent form at the outside of the glomerulus.
"Glomerulonephritis" is defined as "an inflammation of the glomerulus of the kidney, charac-
terized by proteinuria, hematuria, decreased urine production, and edema." Mosby's Medical, Nursing and Allied Health Dictionary 523 (3d ed.1990).

al abnormalities of the kidney was performed in 1979 and the results were normal. When asked whether he could give an opinion, to a reasonable degree of medical certainty, about a causal relationship between Verte's occupational exposure to methylene chloride and the onset of her kidney disease, Dr. Yoburn stated that he could not form any opinion about causation.

After reviewing the medical evidence submitted at the hearing, the trial commissioner concluded that Dr. Gilman's testimony, although informative, was lacking in that Dr. Gilman had no knowledge of Verte's medical history prior to March 1984. The trial commissioner was instead persuaded by the testimony of Dr. Yoburn, which he found to be more "practical and illuminating," to the extent that Dr. Yoburn based his opinion on physical examination of Verte, as well as on her past medical history. In so relying, the trial commissioner found that Verte failed to prove that her kidney disease arose out of and in the course of her employment.

After carefully reviewing the evidence presented at the hearing before the trial commissioner, the Appellate Commission reversed the decision of the trial commissioner, finding that since Dr. Yoburn had no opinion on the critical issue of causation, his medical testimony was neither legally competent nor probative and therefore, the trial commissioner's reliance on that testimony was in error. Instead, the Appellate Commission relied on the testimony of Dr. Gilman, which it found established the required nexus between Verte's employment and subsequent incapacity.

The employer now argues that the Appellate Commission erred when it conducted a de novo review of the evidence and determined that Verte did in fact incur an occupational injury. We note at the outset the well-settled rule in this jurisdiction that when considering an appeal from a trial commissioner's decree, the Appellate Commission examines and weighs the evidence, draws its own conclusions, makes its own findings of fact, and ultimately decides whether the evidence preponderates in favor of or against the findings in the trial commissioner's decree. *Hicks v. Vennerbeck & Clase Co.*, 525 A.2d 37, 41 (R.I. 1987); *Bottiglieri v. Caldarone*, 486 A.2d 1085, 1087 (R.I.1985).

■ In its brief, employer maintains that because the trial commissioner's decision was based on a credibility finding relative to deposition testimony, the Appellate Commission could not review and independently weigh the medical evidence presented before it without first finding that the trial commissioner was clearly wrong or that he either misconceived or overlooked material evidence. In support of its position, employer relies to a great extent upon this court's decision in *Davol, Inc. v. Aguiar*, 463 A.2d 170 (R.I.1983). However, with regard to credibility determinations, *Aguiar* dictates that it is only when the Appellate Commission is *reevaluating* a credibility determination of a certain witness or witnesses that it is subject to the stricter standard of review. The reason for the stricter standard in that instance is that the trial commissioner is in the best position to observe the appearance of a witness, his or her demeanor, and the manner in which he or she answers questions. As we have stated in *Aguiar*, "[t]hese impressions are invaluable in assessing the credibility of witnesses and ultimately in determining what evidence to accept and what evidence to reject." *Id.* at 174. In assessing the applicability of *Aguiar* to the instant case, we feel it is apparent that in *Aguiar* the trial commissioner was confronted with conflicting *live* testimony. The *Aguiar* court found that since the trial commissioner was in the best position to assess the credibility of the medical witnesses by personally observing their demeanor, he should not be overruled unless clearly wrong, in a situation in which his decision was based on such a credibility finding. The employer's reliance on the standards set forth in *Aguiar* is clearly misplaced in the instant case.

First, unlike *Aguiar*, the trial commissioner in this case was not presented with live medical testimony that would afford him the opportunity to make credibility de-

terminations based on the witnesses' demeanor. Rather, all the medical evidence presented at the hearing was in written form, either by deposition, affidavit, or medical record. As such, it would seem that the trial commissioner was in no better position than the Appellate Commission to assess the written medical evidence and determine whether a causal nexus had been established. *See Town of West Greenwich v. Stepping Stone Enterprises, Ltd.*, 416 A.2d 659, 663–64 (R.I.1979); *Gillogly v. New England Transportation Co.*, 73 R.I. 456, 462, 57 A.2d 411, 414 (1948). Accordingly, since credibility based upon first-hand observation is not at issue in this case, the strict standard of review set forth in *Aguiar* is not controlling.

■ Also, here we are faced with a situation in which the Appellate Commission afforded full credibility to all the witnesses, but because Dr. Yoburn had *no opinion* regarding the critical issue of causation between Verte's illness and her exposure to methylene chloride, the Appellate Commission found that his testimony was neither legally competent nor probative on the issue of causation. Thus, the Appellate Commission properly relied upon this court's decision in *Hicks v. Vennerbeck & Clase Co.*, 525 A.2d 37 (R.I.1987), in which we held:

"In reversing the trial commissioner's finding of continuing incapacity, the appellate commission did not reject the testimony of any witness as unworthy of belief and hence was not required, as Hicks contends, to find that the trial commissioner clearly erred in assessing the credibility of witnesses or overlooked or misconceived material evidence. Rather the commission reviewed the evidence anew, affording full credibility to all witnesses, and found that it failed to rise to the quantum of proof required as a matter of law to establish a causal relationship * * *. The sole question before us therefore is whether the record can support this finding." *Id.* at 41–42.

Accordingly since in the present case the trial commissioner specifically indicated that he was relying upon the opinion of Dr. Yoburn in determining that no causation was proven, the Appellate Commission had the right to review the legal competence of that evidence and to reject it for lack of probative value. Because the determination made by the Appellate Commission was one of competency of the evidence and not credibility of a witness, we find that the Appellate Commission committed no error in conducting a de novo review, and in fact, was required to do so. *See Villa v. Eastern Wire Products Co.*, 554 A.2d 644, 646–47 (R.I.1989).

■ The employer also raises the issue whether the decision of the Appellate Commission was in fact supported by legally competent evidence. Essentially, the question becomes whether the Appellate Commission's reliance on the testimony of Dr. Gilman was proper. This court has held that the testimony of experts is competent evidence upon which the Appellate Commission may modify the decree of the trial commissioner. *See Murray v. Lloyd Mfg. Co.*, 114 R.I. 192, 195–96, 330 A.2d 413, 415 (1975); *Moretti v. Turin, Inc.*, 112 R.I. 220, 223, 308 A.2d 500, 502 (1973). In the instant case the Appellate Commission determined that the testimony of Dr. Gilman established that Verte's kidney disease and her subsequent disability were causally related to her occupational exposure to methylene chloride. This determination was made by the Appellate Commission after considering all the medical testimony presented before the trial commissioner. Doctor Gilman stated unequivocally that he believed Verte's kidney disease to be causally connected to her exposure to the methylene chloride. Doctor Yoburn stated that he could form *no opinion* on that issue. Even when there is no conflicting testimony on the issue of causation, the Appellate Commission is not required to accept testimony that it finds lacking in competence. *Carter v. ITT Royal Electric Division*, 503 A.2d 122, 124 (R.I.1986). Accordingly we are of the opinion that the Appellate Commission's finding relating to causation was based upon legally competent evidence and is therefore conclusive and binding upon the court. *See Id.*

For the reasons stated, the employer's petition for certiorari is denied. The writ heretofore issued is quashed. The final decree of the Appellate Commission is sustained. The papers in the case are remanded to the Appellate Commission with our decision endorsed thereon.