**Aurelio GARCIA**

v.

**C.I. HAYES, INC.**

**Aurelio GARCIA**

V.

**WOODLAWN IRON WORKS, INC.**

**No. 90–418–M.P.**

Supreme Court of Rhode Island.

May 5, 1992.

Anthony Grilli, Providence, Constance Pannone, Greenville, for plaintiff.

Earl Metcalf, Gallagher & Gallagher, Providence, Tedford Radway, Cranston, Jeffrey Liptrot, Gallagher & Gallagher, Providence, for defendant.

## OPINION

FAY, Chief Justice.

These consolidated petitions came before the Supreme Court on a petition for certiorari filed by Aurelio Garcia (Garcia) to review a final decree of the Workers' Compensation Appellate Division (appellate division).[1] The appellate division upheld a decision of the trial judge denying Garcia workers' compensation benefits. For the reasons set forth herein, we reverse the decision of the appellate division affirming the trial judge.

On November 20, 1978, Garcia was employed as a construction mechanic by C.I. Hayes, Inc. (Hayes). His duties included welding and building vacuum furnaces and heat-treating machinery. While drilling inside a large furnace, Garcia felt his back snap and he could not move. As a result of his injury, Garcia was unable to work for approximately three months. While out of work Garcia collected benefits pursuant to a preliminary agreement. Thereafter Garcia returned to work as a "leadman," a position requiring less lifting and bending. Although he returned to work, Garcia continued to experience considerable pain in his back. As a result of his back injury, Garcia suffered a second period of incapacity in April 1980. During his approximately three-month absence from work, he again received weekly compensation.

Garcia left Hayes in August 1981 and relocated to California. While in California Garcia worked for several different employers. He stated that his back "slipped" approximately three times during the time he spent in California.

Garcia returned to Rhode Island in May 1986 and began working as a welder for Woodlawn Iron Works, Inc. (Woodlawn) in June. Garcia testified that his job at Woodlawn was physically less demanding than his position at Hayes. On January 16, 1987, Garcia was laid off because of lack of work at Woodlawn. Garcia testified that there was no incident or event at Woodlawn that changed the condition of his back.

After having been laid off, Garcia applied for, and received, unemployment compensation. Garcia testified that when he applied for unemployment compensation, he did not mention that he had injured his back.

Doctor J. C. Vinluan, an orthopedic surgeon, examined Garcia after his accident in 1978. In his deposition Dr. Vinluan stated that at the time of his initial examination, he suspected that Garcia had a ruptured disc and was totally disabled. Doctor Vinluan, with the exclusion of the years that Garcia was in California, treated Garcia from the time of his injury until the date of the trial. The doctor testified concerning Garcia's condition both at the time of the suspension decree and on the date of his incapacity.

Doctor Samuel I. Fandino, on a referral from Dr. Vinluan, began treating Garcia on February 2, 1987. The doctor testified that at his initial examination, Garcia complained "of severe lower back pain radiating to the right lower extremity." Doctor Fandino observed that Garcia had a limited range of motion in his lumbar spine, a pinched nerve in his back as a result of a ruptured disc, and some degree of atrophy in the muscles of his right thigh. The doctor testified that Garcia was totally disabled. Doctor Fandino reviewed the reports and records of Dr. Vinluan, Garcia's X rays, and a CAT-scan report. In March 1987 Dr. Fandino also performed a myelogram that indicated an "L4–5 disc defect consistent with a ruptured disc toward the right." In April 1987 the doctor performed a laminectomy. The doctor testified that the condition of Garcia's back in 1987 was a direct result of the November 1978 accident.

---

1. Pursuant to P.L.1990, ch. 332, entitled "An Act Relating to Workers' Compensation," signed into law by then-Governor DiPrete in July 1990, the Workers' Compensation Commission is to be known as the Workers' Compensation Court, the commissioners are to be referred to as judges, and the appellate commission is to be known as the appellate division. Therefore, for the purposes of this opinion we shall employ the proper terms as set forth in chapter 332 rather than the outdated references that appear in the parties' memoranda of law.

In April 1987 Garcia filed a petition to review or amend an agreement concerning workers' compensation against Hayes. Garcia alleged that the back injury he sustained in November 1978 recurred and caused him to be partially or totally disabled in January 1987. In September 1987 he filed a notice of controversy and a request for hearing against Woodlawn, alleging that he had aggravated his pre-existing back condition while employed at Woodlawn. These two petitions were consolidated for a hearing before a trial judge of the Workers' Compensation Court.

At trial Garcia's attorney introduced into evidence the deposition testimony and notes of Dr. Vinluan as well as a report prepared by Dr. Mehrdad Motamed, who performed an impartial examination of Garcia for Aetna Casualty in April 1979. Doctor Motamed diagnosed Garcia with "sciatic neurodiculitis, with a question of herniated lumbar disc."

After hearing the evidence offered by the parties, the trial judge concluded that the determinative issue in this case was credibility. The judge believed that Garcia's "testimony was hesitant, inconsistent at times, and he appeared to be manufacturing his answers as he went along." The judge placed a great deal of emphasis on the fact that Garcia responded no to a question on Woodlawn's application asking if he had "any physical condition which may limit your ability to perform the job applied for?" Garcia testified that he answered no because he was afraid that he would not get hired and because he believed that he could perform the job despite the pain. The judge also found it "significant that the petitioner waited until August of 1987 to begin litigation" concerning his injury. He noted that Garcia had failed to inform either his prospective employer or the unemployment office that he had a back injury. The judge disregarded Garcia's testimony because he did not "believe the testimony of the petitioner in that I do not believe that he proved that he sustained an injury while working for one of the many employers that he worked for as opposed to the others."

The trial judge also rejected all the medical evidence introduced at trial since he did not believe that the opinions were probative because they were not based upon a true and accurate history of Garcia's back injury. As a result the trial judge denied both of Garcia's petitions.

On appeal the appellate division determined that it was "powerless to substitute our judgment for that of the trial judge unless he was clearly wrong, or overlooked or misconceived material evidence." The appellate division concluded that the trial judge had carefully considered all the evidence presented at trial and that he "was not 'clearly wrong' in his assessment of the testimony presented to him."

Garcia raised several arguments on appeal. He contends that the appellate division erroneously concluded that it was powerless to review the trial judge's credibility determination. Specifically he argues that the trial judge erred by rejecting all the medical evidence because he did not believe that Garcia was credible.

This court has held that a trial judge is in the best position to view the appearance of a witness, his or her demeanor, and the way in which the witness responds to questions. *Grimes Box Co. v. Miguel*, 509 A.2d 1002, 1004 (R.I.1986); *Davol, Inc. v. Aguiar*, 463 A.2d 170, 174 (R.I.1983). "These impressions are invaluable in assessing the credibility of witnesses and ultimately in determining what evidence to accept and what evidence to reject." *Aguiar*, 463 A.2d at 174.

The appellate division may not set aside findings based upon the trial judge's credibility determinations unless the division finds that the trial judge's findings were clearly wrong or that the trial judge misconceived or overlooked material evidence. *Id.* at 173–74. This standard recognizes that the trial commissioner is better qualified than the appellate division to assess the credibility of a witness testifying before the trial judge.

However, this court held that the *Aguiar* standard only applies when the appellate division is "*reevaluating* a credibility determination." *Verte v. Mearthane Prod-*

*ucts Corp.,* 583 A.2d 524, 527 (R.I.1990). In *Verte* all the medical evidence offered at the hearing was in written form. *Id.* at 528. Because the testimony was not live, the trial judge was not in a better position than the appellate division to evaluate the written medical evidence. *Id.* Therefore, the appellate division was empowered to assess the written medical evidence without finding that the trial judge overlooked or misconceived the evidence.

■ In the present case Garcia's attorney presented the trial judge with Dr. Vinluan's deposition testimony and office-examination notes as well as Dr. Motamed's written report. The trial judge disregarded this evidence because he doubted Garcia's credibility and believed the medical opinions were not based upon a true and accurate history of Garcia's injury. Relying upon *Verte,* we conclude that the appellate division was not "powerless" to review the medical evidence of Doctors Vinluan and Motamed. The trial judge was not confronted with live medical testimony requiring him to make credibility determinations based upon the doctors' demeanor. The trial judge and the appellate division were in the same position with respect to assessing the credibility and the weight to be given to the written medical evidence. Therefore, we conclude that the appellate division erred in failing to consider the written medical evidence presented at the hearing.

■ This court has held that a trial judge may reject medical evidence that is reliant on an untrue or inaccurate history of the injury provided by the employee. *Moreno v. NULCO Mfg. Corp.,* 591 A.2d 788, 790 (R.I.1991). It appears that the trial judge in the present case rejected Dr. Fandino's live testimony, relying upon the above-cited reasoning. However, we believe that the trial judge was clearly wrong in disregarding the doctor's testimony.

Garcia did provide a history of his back injury to Dr. Fandino. However, the doctor did not base his testimony solely on the history provided by Garcia. In testifying, Dr. Fandino also relied upon a CAT scan, X rays, and a myelogram as well as physical examinations performed by himself and Dr. Vinluan in making his diagnosis. Upon reading the record, we discern no proof that Garcia untruly or inaccurately described his 1978 accident to Dr. Fandino. Even if the history provided by Garcia was inaccurate or untrue, Dr. Fandino's testimony was not completely reliant on Garcia's statements to him. Therefore, the trial justice erred in disregarding Dr. Fandino's testimony as a result of his doubts about Garcia's credibility.

Since we believe that the appellate division improperly failed to consider the written testimony of Doctors Vinluan and Motamed and that the trial judge erroneously disregarded Dr. Fandino's testimony, we grant the petition for certiorari. The decision appealed from is quashed, and the case is remanded to the Workers' Compensation Court with our decision endorsed thereon.